[No. 51126-8.   En Banc.   April 25, 1985.]

JOAN FUNDERBURK, ET AL, *Appellants,* v. BECHTEL POWER CORPORATION, *Respondent.*

*Critchlow & Williams,* by *David E. Williams* and *Michael T. Kozlowski,* for appellants.

*Nashem & Wagner* and *Norman R. Nashem, Jr.,* for respondent.

GOODLOE, J.—This cause of action is before us because of our order which allowed the Court of Appeals, Division Three, to transfer this case from Benton County Superior Court directly to this court. The only issue presented is whether there is substantial evidence to support the trial court's finding of fact regarding a comment made by respondent Bechtel Power Corporation's agent. Reviewing the record, we find there is substantial evidence to uphold the trial court's finding.

Prior to the incident in question, Bechtel had contracted with Washington Public Power Supply System to take over the engineering management and safety functions of the construction of the nuclear generating plants known as Hanford Nos. 1 and 2. One provision of the contract obligated Bechtel to operate first aid stations. Bechtel was to employ nurses while WPPSS would provide the stations, equipment, and supplies.

The three appellant nurses, Joan Funderburk, Debi Lang, and Mary Sams, had worked at these aid stations while they were operated by Bechtel's predecessor. All

three sought to be employed by Bechtel at the Unit 2 aid station. Bechtel required nurses to have an emergency medical technician (EMT) certification and a cardiopulmonary resuscitation (CPR) certification. Of the three appellants, only one, Sams, had those certifications. In February or March of 1981, Bechtel offered Sams a position at this station, but not Funderburk or Lang. Sams declined the offer. The employment of the three appellants by Bechtel's predecessor was terminated on May 15, 1981.

On May 27, 1981, five safety officials met to consider a subject not related to this case. Present at the meeting was Ken Elledge, a project safety supervisor for Bechtel, whose duties included supervision of the nursing stations. Also present were four WPPSS safety officials: Taylor, Fisher, Hood, and Caster. Caster's employment by WPPSS was scheduled to end 2 days after the meeting.

At this meeting Elledge made various comments about the Unit 2 aid station. He stated that the eye examination chair was inadequate, partitions were needed to facilitate privacy, and the supplies needed to be better organized. In addition, Elledge stated that the floor covering was cracked with some pieces missing and that the station was dusty or dirty. During this meeting Elledge used a derogatory term to describe the condition of the premises and equipment. The evidence was conflicting as to whether the term was "boar's nest" or "whore's nest". Moreover, there was a factual issue whether the term referred to the aid station or to the nurses.

After the meeting, Caster told Paul Geihm, a safety official who was employed by Bechtel's predecessor and under whom the appellants had worked, that Elledge had said, "The reason Bechtel did not hire the nurses at Unit 2 was because they were a bunch of whores, and that it was nothing but a whore's nest." Clerk's Papers, at 9. Geihm repeated what Caster told him to two of the appellants.

The appellants claim Elledge said that the appellants were a bunch of whores and that the aid station looked like a whore's nest. They claim that they were libeled by that

statement. Moreover, they claim that Elledge's statement was the cause of their not being employed by Bechtel. Bechtel, on the other hand, claims that Elledge used the term "boar's nest" and was referring to the aid station, not the nurses. The trial court found as a matter of fact that Elledge used the term "whore's nest" as part of the statement "It looked like a whore's nest." Clerk's Papers, at 8. In addition, the court concluded that Elledge was referring to the station and its equipment and not the nurses personally. The court concluded that everyone present at the meeting understood Elledge was referring to the condition of the premises and not the morals of the nurses. The court relied on evidence presented at trial that Caster lied about what Elledge said because of the ill feelings he had toward Bechtel. Consequently, the trial court held that the appellants were not defamed. The appellants appealed the decision.

This court will not reverse a trial court's finding of fact when there is substantial evidence in the record to support it. *Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978). Here, there is substantial evidence to support the trial court's finding that "whore's nest" referred to, and was understood to refer to, the physical premises of the aid station and not to the nurses. Prior to making the remark about the "whore's nest", Elledge commented on the physical aspects of the aid station, *e.g.*, the eye examination chair, partitions, floor covering, and the dust and dirt present in the station. Moreover, there was testimony by Taylor, who was at the meeting, that Elledge used the term "whore's nest" so that WPPSS would appropriate money to upgrade the aid station. In addition, the only reason that the appellants thought that the phrase referred to them was because Caster, who was at the meeting, told Geihm: "The reason Bechtel did not hire the nurses at Unit 2 was because they were a bunch of whores, and that it was nothing but a whore's nest." Clerk's Papers, at 9. Caster did not testify at the trial, and there was evidence that he held a grudge against Bechtel. Taylor and Fisher, when asked

whether Elledge made the above statement, testified that he did not. Hood was not asked that specific question. All three testified that there was never any reference to the nurses at the meeting.

■ In order for a statement to be defamatory, it must be understood as such by those who heard it. W. Keeton, D. Dobbs, R. Keeton & D. Owens, *Prosser and Keeton on Torts* 780 (5th ed. 1984). Whether a statement is understood to be defamatory is a question for the trier of fact to determine. *See Getchell v. Auto Bar Sys. Northwest, Inc.,* 73 Wn.2d 831, 440 P.2d 843 (1968); *Purvis v. Bremer's Inc.,* 54 Wn.2d 743, 344 P.2d 705 (1959). The trier of fact in this case, the trial court, concluded that the statement did not refer to the appellants and was understood as not referring to the appellants by those who heard it. Accordingly, we affirm the trial court's decision that the appellants were not libeled.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.