68 P.3d 1159 (2003)
Eliot B. MOHR, individually; Mohr & Company, Inc., d/b/a Kitchen Interior Showcase, Appellants,
v.
Tom GRANT and "Jane Doe" Grant, husband and wife, individually, and the marital community composed thereof; and Spokane Television, Inc., a Washington corporation d/b/a KXLY-TV, Respondents.
No. 21033-2-III.
Court of Appeals of Washington, Division 3, Panel Eight.
May 20, 2003.
*1160 Ryan M. Beaudoin, Witherspoon, Kelley, Davenport & Toole PS, Spokane, WA, for Appellants.
Laurel H. Siddoway, Spokane, WA, for Respondents.
SWEENEY, J.
This is a defamation case. KXLY-TV broadcast a series of news stories about the criminal prosecution of a mentally disabled man. Eliot Mohr and Mohr & Company, Inc., doing business as Kitchen Interior Showcase (hereafter Mr. Mohr) alleged that the broadcasts damaged his business and reputation. The question before us is whether Mr. Mohr established a prima facie defamation case sufficient to defeat a motion for summary judgment. We conclude that he made a sufficient showing of defamatory falsehood, negligence, and damages. And so we reverse the order dismissing his suit.

FACTS
KXLY-TV reporter Tom Grant was at the county courthouse working on a story when he was told about the ongoing criminal prosecution *1161 of a developmentally disabled man. The defendant was Glen Burson. Mr. Burson is 40 years old and afflicted with Down's syndrome. He has the mental capacity of a five-year-old and, Mr. Grant was told, did not seem to understand the proceedings.
Mr. Grant obtained the court file and copied two police reports and an incident history. These showed that Eliot and Louise Mohr had requested police assistance with Mr. Burson several times over the previous year. First, they called the police and reported disorderly conduct by Mr. Burson at their place of business, Kitchen Interior Showcase. Police responded. Police again responded to a subsequent second degree criminal trespass complaint. Neither contact resulted in charges against Mr. Burson. But the officers told him he was trespassing and would be arrested if he came back.
The final police incident report was for April 30, 1998. According to that report, when Mr. Burson refused to leave the store Mr. Mohr physically escorted him from the premises. Mr. Burson then threatened the Mohrs, making slashing motions across his throat and saying he would shoot them. The Mohrs called the police out of concern for their safety. Mr. Burson was arrested and charged with trespassing and harassment.
Mr. Grant interviewed Mr. Burson and members of the Burson family. He interviewed public defender, Bill Norton, and Sandie Shepard, an advocate with Arc of Spokane (a service and support organization for people with disabilities). Mr. Grant contacted the prosecutor's office, but it declined to comment. Mr. Mohr did not respond to a request for an interview.
Mr. Grant found no record of any criminal history in Mr. Burson's court files and was told that Mr. Burson had no history of threatening or committing violence. Paula Clark, Mr. Burson's sister, told Mr. Grant that the prosecution had frequently been delayed, causing Mr. Burson considerable anguish, and even weight loss. She said that a 14-day hospitalization for a competency evaluation might be required, which was causing great consternation as Mr. Burson had never before been separated from his mother. The family confirmed that Mr. Burson did not understand what was happening to him.
In the broadcast, Mr. Burson described the incident that culminated in his arrest. He acted out being grabbed by the arm. He said Mr. Mohr hit him and told him to "go away." The tape also showed Homer Burson, Mr. Burson's brother, and defense attorney, Gloria Porter, both of whom portrayed Mr. Burson as gentle and childlike. Another neighborhood business owner for whom Mr. Burson had done odd jobs said that Mr. Burson was harmless "if you deal with him correctly" and do not "antagonize" or "confront" him. Clerk's Papers (CP) at 123.
The story aired as a series on November 16, 17, and 18, and again on December 31, 1998. The Mohrs were not mentioned by name. But in each segment of the series the storefront of Kitchen Interior Showcase was prominently displayed. And the audio liberally repeated the name "Kitchen Interior Showcase."
After the first segment aired, Mr. Mohr called Mr. Grant and complained about the one-sided coverage. In a later segment, Mr. Mohr is shown explaining his past dealings with Mr. Burson and distancing himself from the criminal charges. He said he had not wished to press charges but was told that only the police could abandon the prosecution. Meanwhile, over 30 viewers called Kitchen Interior Showcase to register their disapproval and to announce their intention to boycott the store.
Mr. Burson was eventually found to be incompetent to face trial. And the charges against him were dismissed.

PROCEDURE
Mr. Mohr and Kitchen Interior Showcase sued Tom Grant and KXLY-TV for defamation. Mr. Mohr alleged that KXLY's statement that Mr. Burson had no criminal history created a false impression of the Mohrs, because it omitted the earlier police reports about their prior contacts with Mr. Burson, including previous threats of violence. Mr. Mohr also alleged that the telecasts falsely portrayed him as a bully who had physically assaulted Mr. Burson and callously subjected *1162 him to prosecution. Mr. Mohr alleged damage to his business and to his personal reputation, all resulting in emotional distress. KXLY moved for summary dismissal, asserting the report was true.
In addition to his own affidavit in support of his prima facie case, Mr. Mohr offered the declaration of Greta Boyer, a KXLY viewer with no relationship to the Mohrs. Incensed by the broadcast, Ms. Boyer had driven to Kitchen Interior Showcase the next morning to confront the owner. When she heard Mr. Mohr's side of the story, however, she concluded that the telecasts had created a false impression in her mind:
I was surprised to learn that the Mohrs had contacted the sheriff's department with regard to Mr. Burson's threats on two prior occasions in 1997 and 1998.... I was surprised to learn that Mr. Burson was trespassed from the business property by the sheriff's department, but that he returned on April 30, 1998, nonetheless. KXLY and Tom Grant's omission of these facts created a false impression in my mind. Had I been privy to the actual history between Glen Burson and the Mohrs I would not have been so upset with Eliot Mohr.
CP at 158.
Mr. Mohr also produced a public statement issued by the prosecuting attorney's office on November 17, the day after the first broadcast:
[The] charges stemmed from an incident on April 30th, 1998 in which Mr. Burson made threats against the lives of the business owners after refusing to leave the business as requested.
. . . .
There were three prior reports to the Sheriff's office [concerning] Mr. Burson's trespass at the business and his threats before the incident which led to the arrest of 4/30/98. In a report from Jan. 8, 1998, Mr. Burson was contacted by Deputy Lawson regarding his repeated trespassing and threats. Deputy Lawson asked Mr. Burson if he knew he wasn't supposed to go to the business. According to the officer's report, "He told me he understood. He said he understood that he could go to jail."
. . . .
It is unfortunate that this case, ... has become distorted by a news report which can only be characterized as one-sided. Had the report accurately noted the underlying facts of the charge, including the death threats involving the use of a gun, perhaps the fears of the victims and the concerns of the prosecutor's office about public safety would have been better shown. This is particularly unfortunate given that all of the facts set forth above were in the court file available to the public, and could have been accessed prior to the news report being aired which omitted them.
CP at 174-77.
As a preliminary matter, the court ruled that Mr. Mohr was a private individual, not a public figure, for defamation purposes. The court found Mr. Mohr had failed to show with convincing clarity that any statement in the report was false, and found no genuine issue of material fact as to whether the broadcasts were substantially true. The court granted KXLY's motion for summary judgment and dismissed the complaint.

DISCUSSION
Mr. Mohr contends that certain statements in the broadcasts were false. He also contends that Mr. Grant chose to omit important material facts. And the inclusion of these facts would have created an entirely different impression of him and his business in the minds of viewers. KXLY responds that each individual statement was literally true. And that the gist of its report was true when considered as a whole.
STANDARD OF REVIEW
On motion for summary judgment, the moving party has the burden of showing that there is no disputed issue of material fact. Morales v. Westinghouse Hanford Co., 73 Wash.App. 367, 869 P.2d 120 (1994). On review, we answer the same question that was before the trial court: could a reasonable jury find in favor of the nonmoving *1163 party, viewing the evidence in the light most favorable to it. "If the answer is yes, the motion for summary judgment should be denied and the question should go to the jury." Herron v. KING Broad. Co., 112 Wash.2d 762, 767-68, 776 P.2d 98 (1989).
PRIMA FACIE CASE
A defamation plaintiff must show (1) that the defendant made a false statement, (2) without privilege, (3) with the necessary degree of fault, and (4) that he thereby suffered damages. Wood v. Battle Ground Sch. Dist., 107 Wash.App. 550, 567, 27 P.3d 1208 (2001). KXLY asserts no privilege.
BURDEN OF PROOF
On a defense motion for summary judgment in a defamation case, the court must evaluate the prima facie showing by the evidentiary standard the plaintiff must meet at trial. Haueter v. Cowles Publ'g Co., 61 Wash.App. 572, 584, 811 P.2d 231 (1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
For the purposes of this litigation, the court ruled that Mr. Mohr was a private figure. The degree of fault required is then negligence. Mr. Mohr must show that the defendants knew, or in the exercise of reasonable care should have known, that the statement was false or would create a false impression. Mark v. Seattle Times, 96 Wash.2d 473, 483, 635 P.2d 1081 (1981); Bender v. City of Seattle, 99 Wash.2d 582, 599, 664 P.2d 492 (1983); Moe v. Wise, 97 Wash.App. 950, 957, 989 P.2d 1148 (1999).
FALSITY
Mr. Mohr alleged the broadcasts contained two kinds of defamatory falsehood: false statements and material omissions.
False Statements. A false statement is one which falsely describes an act, condition, or event. Wood, 107 Wash.App. at 572, 27 P.3d 1208. The defendant need not prove the literal truth of disputed statements when moving for summary judgment. Mark, 96 Wash.2d at 494, 635 P.2d 1081. Rather, the publisher "`need only show that the statement is substantially true or that the gist of the story, the portion that carries the "sting," is true.'" Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union, Local 1001, 77 Wash.App. 33, 43, 888 P.2d 1196 (1995) (quoting Mark, 96 Wash.2d at 494, 635 P.2d 1081).
Mr. Mohr alleged that KXLY falsely reported that Mr. Burson had no criminal history. KXLY responds that this statement was true. Mr. Burson had no prior arrests or convictionsessential components of criminal history. Mr. Mohr also alleged that KXLY falsely reported that Mr. Mohr twisted Mr. Burson's arm and hit him. Again, KXLY truthfully reported what Mr. Bursonan eyewitness to the eventssaid happened. The broadcast included a video clip of Mr. Burson giving his version of the events leading to his arrest. Mr. Mohr also challenges the truth of the introductory remarks made by KXLY's anchor that an "altercation" occurred between Mr. Mohr and Mr. Burson and that "some pushing and shoving" took place. CP at 120. Again, an altercation is simply a noisy interaction, and pushing and shoving arguably is an accurate characterization of Mr. Burson's statements.
Finally, Mr. Mohr contends that KXLY falsely stated that he was prosecuting a mentally handicapped person for criminal trespass just because he was looking for a job washing windows. The record supports KXLY's response that it made no such statement.
Material Omissions. The essence of Mr. Mohr's contention, though, is that this broadcast, by omitting material facts that would have put the incident in the proper context, created a false impression of the Mohrs and of their involvement in Mr. Burson's arrest. Mr. Mohr contends that the public outcry against him and his business in response to these broadcasts was generated less by specific false statements than by the omission of material factsfacts that would have ameliorated the public's negative perception of him following the first broadcast.
Falsity can be either express or implied. Schmalenberg v. Tacoma News, Inc., 87 Wash.App. 579, 590, 943 P.2d 350 (1997); *1164 Herron, 112 Wash.2d at 774, 776 P.2d 98; Camer v. Seattle Post-Intelligencer, 45 Wash.App. 29, 38, 723 P.2d 1195 (1986). A story that contains only truthful statements may nonetheless be false and defamatory as it relates to the plaintiff if it omits material facts. Turner v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex.2000). It is not enough to get the details right if you fail to put them in the proper context. Id.
No Washington case directly addresses the problem of material omissions. But other jurisdictions have readily accepted defamation by omission where, as here, the plaintiff is a private individual suing a media defendant.[1]Diesen v. Hessburg, 455 N.W.2d 446, 450 (Minn.1990) (citing DAN B. DOBBS, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 116 (Supp.1988)). This is because the First Amendment protection of the media in its reporting of public officials and their conduct is not implicated. Diesen, 455 N.W.2d at 450.
Mr. Mohr concedes that Mr. Burson had no "record" of prior arrests or convictions. But he points to the numerous police reports in the court file describing prior aggressive behavior toward the Mohrs, including threats of violence. And he notes that the police had warned Mr. Burson that he would be arrested if he did not stay away from the Mohrs' store. Mr. Mohr contends that a reasonable jury could find that the impactor stingof these broadcasts would have been softened if KXLY had included these facts in its report. These police reports were known to Mr. Grant and were available to KXLY in the court files. CP at 49-50, 54. Mr. Mohr contends that a jury might well find that KXLY could and should have mentioned this history between the Mohrs and Mr. Burson. And the failure to do so made Mr. Burson more sympathetic to the viewers at Mr. Mohr's expense.
When the plaintiff alleges material omissions, the defendant is not entitled to summary judgment by simply establishing the truth of individual statements. It must defend the omissions of the alleged material facts. Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 387 (8th Cir.1996).
An example of classic defamation by omission is Memphis Publ'g Co. v. Nichols.[2] In Nichols, a newspaper reported that a woman shot both Ms. Nichols and the woman's husband after discovering the husband in Ms. Nichols' home. The article failed to mention that Mr. Nichols and two neighbors were also present. The resulting clear implication was that of an adulterous relationship. Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 414 (Tenn.1978). The court found it self-evident that, although each specific statement in the article was true, it was nonetheless defamatory. Id. at 420.
To be defamatory, the publication under consideration must state or imply provable facts that are demonstrably false. Schmalenberg, 87 Wash.App. at 590-91, 943 P.2d 350; Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). A defamation by implication must also falsely imply provable facts, not an idea or opinion. Schmalenberg, 87 Wash.App. at 590-91, 943 P.2d 350. Implied provable facts are more than just an "implied disparaging message." It is not enough to show an overall negative message independent of the facts. Auvil v. CBS "60 Minutes," 67 F.3d 816, 822 (9th Cir.1995).
Here, Mr. Mohr points to discrete, provable, historical facts, known to KXLY and crucial to the context of the Mohrs' involvement in the Burson incident. He alleges that the omission of these facts produced the defamatory impact, or sting, of the broadcast. KXLY defends only the literal truth of individual statements in the broadcasts. Mr. Mohr's allegation that material omissions constituted the defamatory falsehoods has not been addressed.
DAMAGE OR STING
What constitutes the sting of a news story is a question of fact for the jury. *1165 Fleckenstein v. Friedman, 266 N.Y. 19, 23, 193 N.E. 537 (1934). The critical question is whether the story as broadcast would have a more negative effect on the mind of the viewerresult in greater public opprobriumthan would the alleged truth. Clardy v. Cowles Publ'g Co., 81 Wash.App. 53, 66, 912 P.2d 1078 (1996); Wehling v. Columbia Broad. Sys., 721 F.2d 506, 509 (5th Cir.1983).
Mr. Mohr contends that a jury could find that the gist of this story, as it touched and concerned him, is that a mentally handicapped person happened to wander into his store looking to wash windows in exchange for candy, and his immediate and unprovoked response was to assault the handicapped person and prosecute him for criminal trespass and harassment. The increased public opprobrium generated by this over what would have resulted from the full story constitutes the "sting" for the purposes of his prima facie defamation case. See Herron v. KING Broad. Co., 112 Wash.2d 762, 769, 776 P.2d 98 (1989).
We decide as a matter of law whether the published story was susceptible to a defamatory meaning in the mind of a reasonable viewer when compared to the full story. Swartz v. World Publ'g Co., 57 Wash.2d 213, 215, 356 P.2d 97 (1960). If the news piece is susceptible to a defamatory meaning, then a jury should decide whether it was in fact so understood by viewers. Funderburk v. Bechtel Power Corp., 103 Wash.2d 796, 800, 698 P.2d 556 (1985); Swartz, 57 Wash.2d at 215, 356 P.2d 97.
Mr. Burson did come to the store looking to wash the windows for candy. And Mr. Burson was prosecuted. But a reasonable jury could adopt Mr. Mohr's view of the case. Mr. Mohr presented evidencewhich we must accept as truethat over 30 viewers attached sufficient public opprobrium to the published story to call the store and voice their indignation. The effect of the "sting" or the degree to which the story as broadcast had a more negative effect than would the pleaded truthis a question for the jury. The parties here disagree over what constitutes the sting of this story, as it relates to Mr. Mohr. But a jury could reasonably find that KXLY omitted the following material facts:
 Mr. Burson had paid unwelcome visits to Mr. Mohr's store numerous times in the past.
 The Mohrs had called the police at least twice before and had complained that Mr. Burson had threatened to put a bullet into Mr. Mohr's head and had threatened Ms. Mohr.
 The police had warned Mr. Burson that he was trespassing and that he would be arrested if he came back.
 The police believed Mr. Burson understood the warning.
 On the day of his arrest, Mr. Burson admitted to the officers that he had made threats of violence because he was mad.
CP at 47-48, 55.
A reasonable jury could find that the story without these facts was more damaging to Mr. Mohr than a story including them would have been. This information was also a matter of public record in the police reports that were included in the court file. Mr. Grant had this information. A jury could find that Mr. Grant and KXLY either negligently omitted the contextual material or intentionally did so to maximize Mr. Burson's appeal to the sympathies of the audience. We cannot say that no reasonable jury could find that the omitted facts would have placed the events of April 30 in a context in which the Mohrs' conduct would appear less arbitrary and insensitive than in the story as broadcast.
If believed by the jury, Mr. Mohr's evidence presents a prima facie case of defamation. Mr. Mohr presented sufficient evidence to defeat summary judgment on the issue of whether material omissions rendered the otherwise true story false and defamatory with respect to Mr. Mohr.
The summary dismissal of Mr. Mohr's claim is reversed.
Mr. Mohr requests fees and mentions RAP 18.1. But the brief includes no argument and suggests no legal basis. We *1166 cannot, therefore, consider the request for fees.
BROWN, C.J., and KURTZ, J., concur.
NOTES
[1] See, David M. Cohn, Comment, The Problem of Indirect Defamation: Omission of Material Facts, Implication, and Innuendo, 1993 U. CHI. LEGAL F. 233, 242-46.
[2] 569 S.W.2d 412 (Tenn.1978).