[No. 72009-6. En Banc.]
Argued September 5, 2002. Decided September 11, 2003.

*In the Matter of the Personal Restraint of* DAROLD RAY STENSON, *Petitioner.*

*Sheryl G. McCloud,* for petitioner.

*Deborah S. Kelly, Prosecuting Attorney for Clallam County,* and *Lauren M. Erickson, Deputy,* and *Christine O. Gregoire, Attorney General,* and *John J. Samson, Assistant,* for respondent.

*Nancy L. Talner* on behalf of American Civil Liberties Union of Washington, amicus curiae.

ALEXANDER, C.J. — Darold R. Stenson was convicted and sentenced to death in Clallam County Superior Court in 1994 on two counts of premeditated first degree murder with aggravating circumstances. His convictions and sentence were affirmed by this court in *State v. Stenson*, 132 Wn.2d 668, 940 P.2d 1239 (1997) (*Stenson* I). Stenson subsequently filed a personal restraint petition, which this court denied in *In re Personal Restraint of Stenson*, 142 Wn.2d 710, 16 P.3d 1 (2001) (*Stenson* II). Stenson has filed this second personal restraint petition setting forth five "assignments of error." He contends that these were not raised in his first personal restraint petition because they are based upon either new "controlling authority" or "critical facts" which had not yet been developed or had been withheld by the State at the time the first personal restraint petition was decided. Opening Br. in Supp. of Pers. Restraint Pet. at 1, 4. He asserts that these claims justify a new trial or, at the very least, a new sentencing hearing. They are as follows:

1. The Washington Supreme Court erred in maintaining and providing to appellate counsel a database of aggravated murder cases, upon which both the parties and this Court relied for presentation of mandatory review appellate issues, which was incomplete and skewed in favor of death.

2. The Superior Court affirmatively misadvised Mr. Stenson about his right to allocution and thereby chilled his exercise of that right.

3. Appointed counsel for Mr. Stenson's first PRP [(personal restraint petition)] lacked the credentials required by this Court's [Rules of Appellate Procedure].

4. The state erred in charging the vague, alternative, "concealment" aggravating factor (then-RCW 10.95.020(7)), and the trial court erred in instructing the jury with its vague, alternative, terms.

5. The prosecution withheld material, exculpatory impeachment evidence concerning Washington State Patrol Crime Laboratory criminalist-witness Mike Grubb's methods and background.

*Id.* at 1.

The State of Washington moved to strike Stenson's petition on procedural grounds. It has, however, addressed the substance of Stenson's petition and asserts that it is without merit.

I

Because the facts underlying Stenson's convictions were extensively discussed in this court's decision affirming Stenson's convictions and sentence following his direct appeal, as well as in our decision denying Stenson's first personal restraint petition, our recitation of the facts is relatively brief. At the outset, we note that Stenson was charged in Clallam County Superior Court with two counts of premeditated first degree murder with aggravating circumstances. The State thereafter gave notice that it was seeking the death penalty.

Substantial evidence was produced at the trial which showed that at Dakota Farms in Clallam County in March of 1993, Stenson shot his wife, Denise Stenson, and his business associate, Frank Hoerner. The evidence also disclosed that Stenson, in a rather clumsy fashion, attempted to establish that Hoerner had shot Denise Stenson and then turned the murder weapon, a revolver, on himself. The physical evidence, in particular, undermined Stenson's effort to blame Hoerner for the murder of Denise Stenson and for what he claimed was Hoerner's suicide. Other evidence established that Stenson killed his wife in order to collect life insurance benefits and killed Hoerner to get out from under a debt he owed Hoerner and to cast blame on Hoerner for the murder of Denise Stenson.

A key witness at the trial was Michael Grubb, the supervising forensic scientist at the Washington State Pa-

trol Crime Laboratory. He opined that some of the blood discovered on Stenson's jeans was of a type that could only have been placed there by a dripping from above or a high velocity spattering caused by the impact of a bullet upon a body. Grubb also testified as to a smear on Stenson's jeans, indicating his belief that it was transferred from Hoerner's body by means of direct contact. Stenson's trial counsel objected to this testimony on two grounds. First, that "Mr. Grubb has not been sufficiently qualified yet as an expert in interpretation of blood stain evidence at a crime scene." Verbatim Report of Proceedings (VRP) (Aug. 1, 1994) at 1243. Second, that "phenolphthalein and luminal are presumptive tests only for blood. And in the absence of confirmatory tests, it's improper for [Grubb] to express an opinion as to whether or not the substance in question is or is not human blood."[1] *Id.* These objections were overruled.

At the conclusion of the guilt phase of the trial, the jury found Stenson guilty of the premeditated first degree murders of Denise Stenson and Frank Hoerner. The jury also concluded, in a special verdict form, that in the case of the murder of Denise Stenson "[t]here was more than one person murdered and the murders were part of a common scheme or plan or the result of a single act of the person." Clerk's Papers (CP) at 363. The jury made an identical special finding relating to the murder of Hoerner and also found that "[t]he defendant committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime." CP at 364.

Prior to the penalty phase of the trial, the trial judge advised Stenson on two separate occasions of his right to allocution. The judge also asked him if he wished to "speak to the jurors and exercise your right of allocution." VRP

---

[1] The blood on Stenson's pants matched Hoerner's blood protein profile. Evidence regarding the match came in through the testimony of Joseph J. Errera, a special agent assigned to the Federal Bureau of Investigation's DNA (deoxyribonucleic acid) Analysis Unit, who tested the blood samples. Agent Errera's testimony is not at issue in this petition and Stenson is not claiming that the blood on his pants was not Hoerner's blood. Furthermore, the trial court's admission of phenolphthalein and luminal blood testing was affirmed in *Stenson I*, 132 Wn.2d at 712-18.

(Aug. 17, 1994) at 367. Stenson declined. The jury subsequently concluded that there were no circumstances that mitigated against imposition of the death penalty. The trial court thereafter entered a judgment and sentence imposing the death penalty on Stenson for the murders of Denise Stenson and Frank Hoerner. As noted above, this court upheld Stenson's convictions and sentence on appeal and later denied his first personal restraint petition.

## II

### State's Motion to Strike

The State has moved to strike Stenson's personal restraint petition on grounds that the petition was (A) not properly served, (B) not properly verified, and (C) is a mixed petition. We discuss each contention.

### A. Service of Personal Restraint Petition

Stenson did not serve this personal restraint petition on the Clallam County prosecuting attorney. Instead he filed it with the clerk of this court and served a copy of it upon the Office of the Attorney General. The attorney general subsequently furnished the Clallam County prosecutor with a copy of the petition. The State asserts that "[s]ervice on the Attorney General was insufficient. . . . [s]ince the prosecutor is the statutorily mandated party to the action." Mot. to Strike Pet'r's Pers. Restraint Pet. at 3. It contends that "to make the action viable and confer jurisdiction over the State, it was necessary that the prosecutor be served." *Id.*

██ The statutes the State cites as support for its contention that Stenson must serve the prosecuting attorney of Clallam County with his petition are RCW 36.27.020 and RCW 43.10.090. Neither of these statutes indicate that the prosecutor must be served with a personal restraint petition. RCW 36.27.020 simply enumerates the duties of a prosecuting attorney, whereas RCW 43.10.090 sets forth the attorney general's responsibilities for investigating vio-

lations of the criminal laws and for taking over or initiating criminal prosecutions.

■■ More pertinent to the issue of service is RAP 16.8. It simply directs a personal restraint petitioner to file his or her petition with the appellate court. The rule goes on to say that if the petitioner's restraint is imposed by the state or local government, "the clerk of the appellate court will reproduce a copy of the petition and serve the petition on the officer or agency under a duty to respond to the petition." RAP 16.8(c). The official comments to the rule indicate that this filing and service "procedure is designed to be simple so a lay person can make use of it." RAP 16.8 official cmts., 86 Wn.2d 1249 (1975-76). In short, RAP 16.8(c) places the onus for serving the prosecutor on the appellate court when the restraint is imposed by the State, as is the case here. While the record does not reveal that the clerk of this court fulfilled this responsibility, it does disclose that on January 8, 2002, the clerk notified Christopher Shea, the then-Clallam County prosecuting attorney, that Stenson had filed a personal restraint petition. That coupled with the fact that an assistant attorney general furnished the Prosecutor's Office with a copy of the petition, shows that there was no prejudice to the Clallam County prosecutor by any failure of the clerk of this court to furnish that official with a copy of Stenson's petition. We are, therefore, not inclined to dismiss Stenson's petition for insufficient service.

## B. Verification of the Petition

■ RAP 16.7(a)(6) provides that

[i]n all cases where the restraint is the result of a criminal proceeding and the petition is prepared by the petitioner's attorney, the petitioner must file with the court no later than 30 days after the petition was received by the court a document that substantially complies with the following form:

I declare that I have received a copy of the petition prepared by my attorney and that I consent to the petition being filed on my behalf.

The State alleges that Stenson did not comply with this rule and urges us to strike his petition. The record belies the State's contention. It reveals that Stenson signed a form indicating that he consented to having the personal restraint petition filed on his behalf. Significantly, Stenson's signed verification was received by the clerk of this court on January 11, 2002, less than 30 days after the personal restraint petition was filed by his attorney.

## C. Is Stenson's Petition "Mixed"?

RAP 16.4(d) sets forth the grounds on which this court may grant relief by a personal restraint petition. That rule indicates that

[t]he appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73.090, .100, and .130.[2] No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown.

RAP 16.4(d).

RCW 10.73.090(1) places a one-year limit on collateral attacks on a judgment and sentence in a criminal case. A "collateral attack" includes personal restraint petitions. RCW 10.73.090(2). There is no disagreement over the fact that Stenson filed this personal restraint petition more than one year after the judgment and sentence was entered in this case. The time limit specified in RCW 10.73.090(1) is not, however, fatal to a petition that is "based solely" on the six exceptions listed in RCW 10.73.100.

 In its motion to strike, the State contends that one of Stenson's five claims, that the attorneys who represented Stenson on his first personal restraint petition lacked proper credentials, is not a claim which falls under any of the RCW 10.73.100 exceptions to the time limits on collateral attack. Consequently, the State asserts that Stenson's

---

[2] RCW 10.73.130 merely provides that RCW 10.73.090 and .100's provisions apply only to petitions filed more than one year after July 23, 1989.

petition is "mixed" and, thus, according to our decision in *In re Personal Restraint of Stoudmire*, 141 Wn.2d 342, 5 P.3d 1240 (2000), must be dismissed. In *Stoudmire* we concluded that if the petition is based on any grounds outside RCW 10.73.100 it is subject to the one-year time limit unless it satisfies the conditions stated in RCW 10.73.090. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d at 345-46, 349.

Stenson responds to the State's argument by asserting that his claim regarding the credentials of his appellate counsel does not create the mixed petition described in *Stoudmire* because it "is not so much an independent claim as a reason for allowing the instant PRP to go forward." Pet'r's Opp'n to Mot. to Strike Pers. Restraint Pet. at 8. Stenson notes that

> [t]he "mixed petition" rule enunciated in *In re Stoudmire* is rooted in the language of RCW 10.73.100. That statute provides in part, "The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based *solely* on one or more of the following grounds." What is a "ground" for relief? It appears that this Court, following federal authority, has defined a "ground" for relief as a claim concerning the legality of the "conviction," "sentence," or "restraint of petitioner." It is not an argument in favor of permitting a successor PRP. Thus, the "mixed petition" rule does not even apply to that argument about prior PRP counsel's credentials and the permissibility of this successor PRP.

*Id.* at 9-10 (citations omitted). We are inclined to agree with Stenson on this point. As he observes, his claim relating to the credentials of his prior appellate counsel does not go to the merits of the petition. Instead it is offered as a reason to consider his second personal restraint petition.

RAP 16.4(d) prohibits successive personal restraint petitions that seek "similar relief" to that of the first. This court construes the phrase "similar relief" as "focusing on the grounds for the relief rather than the type of relief sought." *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 503, 681 P.2d 835 (1984). RAP 16.4(b) and (c) set forth the grounds which may lead to remedy by the filing of a personal

restraint petition. Those grounds focus on the unlawful nature of the restraint. Stenson's claim is simply that his prior counsel lacked credentials. It is not a substantive ground for relief from the judgment against him. The petition is, therefore, not "mixed" on the basis asserted by the State in its motion. Consequently, we deny the State's motion to strike.

The State does, however, contend that each of Stenson's substantive claims is barred by the time limit set forth in RCW 10.73.090 on the basis that the claims do not fall within the exceptions in RCW 10.73.100—the statute under which Stenson seeks to overcome the procedural time bar. Stenson responds that his claims are not procedurally barred by RCW 10.73.090 because they are all based on "[n]ewly discovered evidence" or "a significant change in the law." RCW 10.73.100(1), (6).

■ In deciding this issue we focus on Stenson's claim that he is entitled to a new trial on account of what he contends is "newly discovered evidence" tending to discredit the testimony of Mike Grubb, the supervising forensic scientist at the Washington State Patrol Crime Laboratory. A claim based upon "newly discovered evidence" may be considered only when the petitioner establishes

> "that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching. The absence of any one of the five factors is grounds for the denial of a new" proceeding.

*In re Pers. Restraint of Brown*, 143 Wn.2d 431, 453, 21 P.3d 687 (2001) (quoting *State v. Williams*, 96 Wn.2d 215, 222-23, 634 P.2d 868 (1981)). A petitioner is not entitled to a new trial based upon " 'newly discovered evidence' " when that evidence is " 'merely cumulative or impeaching.' " *Brown*, 143 Wn.2d at 453.

In support of his argument, Stenson calls our attention to two cases in which the Court of Appeals concluded that

Grubb's testimony for the State was not based upon a scientifically accepted practice.[3] Stenson also notes that Grubb filed a declaration in a case in King County Superior Court in which he disclosed certain practices of the Washington State Patrol Crime Laboratory. Stenson contends that had he known of these practices he could have impeached Grubb's testimony at the trial.[4] It appears to us that the value of all of the "newly discovered evidence," if any, was for impeachment purposes.

Although Stenson asserts that this newly discovered evidence is not merely impeaching "but is also substantive after-the-fact," he fails to develop an argument in support of that assertion. Pet'r's Reply Br. at 39. Furthermore, the "newly discovered evidence" is immaterial. In *State v. Kunze*, 97 Wn. App. 832, 988 P.2d 977 (1999), *review denied*, 140 Wn.2d 1022, 10 P.3d 404 (2000), the issue before the court was whether the witness, Grubb, could opine, based upon the relationship among some of the anatomical features of the external ear, that the defendant was the probable and likely source of a latent earprint discovered at the crime scene. The court concluded there that such earprint identification was not generally accepted in the scientific community. Here, Grubb did not present earprint identification testimony. Thus, even if the evidence was not merely impeaching, it is clear that the evidence gleaned from *Kunze* would not serve any purpose at a hearing on remand. That being the case, this evidence cannot be said to be material. *See, e.g., In re Pers. Restraint of Rice*, 118 Wn.2d 876, 887, 828 P.2d 1086 (1992) (evidence is material only if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different).

In *State v. Dyer*, noted at 86 Wn. App. 1015, *review denied*, 133 Wn.2d 1022, 950 P.2d 477 (1997), Grubb opined

---

[3] *State v. Kunze*, 97 Wn. App. 832, 988 P.2d 977 (1999), *review denied*, 140 Wn.2d 1022, 10 P.3d 404 (2000); *State v. Dyer*, noted at 86 Wn. App. 1015, *review denied*, 133 Wn.2d 1022, 950 P.2d 477 (1997).

[4] *State v. Barfield*, No. 98-1-02618-5 (King County Super. Ct. Oct. 19, 1998).

as to the age of semen deposits discovered in the vagina of a murdered woman. The appellate court concluded that the method he used in reaching his opinion was not generally accepted within the scientific community. Again, this evidence appears to be impeaching only. It is also not material because had it been known to Stenson, it would not have made a difference in his trial where semen age testimony was not presented.

The affidavit Grubb presented in a King County Superior Court case contained Grubb's opinion that another criminologist adhered to state crime lab office procedures in destroying a draft DNA (deoxyribonucleic acid) report in a case completely unrelated to Stenson's. Stenson seems to suggest that because this criminologist destroyed a draft DNA report in another case, Grubb must have destroyed evidence favorable to Stenson in this case. Stenson offers nothing to support this claim and, therefore, fails to show how this "evidence" would change the result of the proceeding.[5]

Moreover, in considering each of these alleged pieces of "newly discovered evidence," we note that Stenson has never contended that Grubb's testimony in the instant case regarding the phenolphthalein tests and blood splatter analysis was not based upon a generally accepted method in the scientific community. Indeed, Stenson unsuccessfully challenged the admissibility of this testimony under ER 702 grounds on direct appeal, and he did not otherwise challenge the testimony. *See Stenson* I, 132 Wn.2d at 714-15. As we have stated, it is clear that the purpose underlying this

---

[5] Stenson also appears to assert that he is entitled to a new trial due to a breach by the State of its duty "to disclose the impeachment evidence in this case to the defendant." Opening Br. in Supp. of Pers. Restraint Pet. at 46-47. In support of that assertion, he notes that "[t]he state must disclose all evidence 'favorable to [the] accused upon request.' " *Id.* at 45 (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). That being said, Stenson loses sight of his underlying legal theory that the impeachment evidence is "newly discovered." Clearly, the State cannot be required, at the time of trial, to disclose information that has yet to come into existence (the three cases mentioned above were decided after Stenson's trial). Furthermore, the State's duty to disclose extends only to material evidence. As we conclude above, the alleged "newly discovered evidence" is not material.

claim is to obtain evidence that could be used at a new trial to impeach Grubb's credentials as an expert witness. Significantly, we have previously recognized that "[t]here is no question that Mr. Grubb was a qualified expert . . . he had worked as a forensic scientist in physical evidence for 20 years, had taught the forensic investigation course at the University of Washington, and had testified over 800 times on forensic issues." *Id.* at 715 n.10. It is clear, therefore, that we have already spoken on this issue. *See, e.g., Stenson* II, 142 Wn.2d at 719 (indicating that as a general rule " 'a personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal' ") (quoting *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994)). Stenson's claim, in sum, does not meet the requirements for "newly discovered evidence" and, therefore, does not escape the time bar set forth in RCW 10.73.090.

A petition which relies upon RCW 10.73.100 to overcome the one-year time bar in RCW 10.73.090 cannot be based upon any grounds other than the six grounds in RCW 10.73.100. *Stoudmire*, 141 Wn.2d at 349. Stenson's claim that there is newly discovered evidence relating to Grubb's testimony does not satisfy the conditions of RCW 10.73.090 and is not within the exceptions delineated in RCW 10.73.100. Therefore, Stenson's petition is "mixed." *See id.* In *Stoudmire*, we concluded that when a claim falls outside RCW 10.73.100 the petitioner may not take advantage of the exceptions in RCW 10.73.100. Only those claims which satisfy the conditions of RCW 10.73.090, namely claims which challenge the facial validity of the judgment and sentence or which challenge the jurisdiction of the court, may be addressed when we are presented with a mixed petition. *Stoudmire*, 141 Wn.2d at 349-52. We recently affirmed our holding in *Stoudmire* in *In re Personal Restraint of Hankerson*, 149 Wn.2d 695, 72 P.3d 703 (2003), indicating that "if a personal restraint petition claiming multiple grounds for relief is filed after the one-year period of RCW 10.73.090 expires, and the court determines that at least one of the claims is time barred, the petition must be dismissed." *Hankerson*, 149 Wn.2d at 702.

Because we recognize that Stenson could refile a petition or petitions raising any of the aforementioned claims that he believes are not barred by the one-year time limit of RCW 10.73.090, we are tempted to address the merits of each of his claims. Any such discussion would, however, be merely dicta and might be viewed as undermining our decisions in *Stoudmire* and *Hankerson*. We are, therefore, not inclined to do so.

### III

Having concluded that Stenson's personal restraint petition is procedurally barred by the mixed petition doctrine discussed by this court in *Stoudmire* and *Hankerson*, we conclude that the State's motion to strike should be granted.

JOHNSON, MADSEN, SANDERS, IRELAND, and CHAMBERS, JJ., and SMITH, J. PRO TEM., concur.