[No. 74593-5. En Banc.]
Considered June 3, 2004. Decided November 24, 2004.

*In the Matter of the Personal Restraint of* DAROLD R.J. STENSON, *Petitioner.*

140

SANDERS and FAIRHURST, JJ., dissent by separate opinion; OWENS, J., did not participate in the disposition of this case.

*Sheryl G. McCloud*, for petitioner.

*Deborah S. Kelly, Prosecuting Attorney*, and *Lauren M. Erickson, Deputy*, for respondent.

*Nancy L. Talner* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1 ALEXANDER, C.J. — In this personal restraint petition (PRP), his third, Darold R.J. Stenson seeks reversal of his death sentence for two counts of premeditated first degree

murder with aggravating circumstances. Stenson's primary contention is that the required proportionality review that was engaged in by this court on his direct appeal was insufficient. Although the State addresses this argument, it contends that Stenson's PRP is barred on procedural grounds. The State relies on three grounds for a procedural bar, including a contention that the petition is barred by the abuse of the writ doctrine.[1] Stenson counters the State's abuse of the writ argument, opining that this PRP is not barred on that basis because (1) the attorneys who represented him in his first PRP were not sufficiently qualified, and (2) the status of the death penalty reports upon which his proportionality review was based constitutes new evidence. In our view, Stenson was adequately represented throughout his first PRP, and the status of the death penalty reports does not constitute new evidence. Therefore, we conclude that Stenson's petition is procedurally barred by the abuse of the writ doctrine.

I

¶2 In 1994, Stenson was convicted and sentenced to death in Clallam County Superior Court for two counts of premeditated first degree murder with aggravating circumstances. The evidence presented at trial established that in March 1993 Stenson shot and killed his wife, Denise Stenson, and his business partner, Frank Hoerner. Evidence also indicated that Stenson committed these murders in order to collect insurance benefits on his wife, to avoid paying Hoerner money from a business venture, and to "blame" Hoerner for the murder of his wife. *State v. Stenson*, 132 Wn.2d 668, 681, 940 P.2d 1239 (1997) (referred to hereafter as *Stenson* I). We affirmed his conviction and

---

[1] The State argues, additionally, that the PRP is barred as a successive petition seeking similar relief and is also barred by the one-year time limit set forth in RCW 10.73.090.

sentence on direct appeal. *Id.* at 760.[2] Stenson has since filed two personal restraint petitions, both of which we denied. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 16 P.3d 1 (2001) (referred to hereafter as *Stenson* II); *In re Pers. Restraint of Stenson*, 150 Wn.2d 207, 76 P.3d 241 (2003) (referred to hereafter as *Stenson* III).

¶3 In his direct appeal, Stenson advanced many arguments attacking the guilt and penalty phases of his trial. Concerning the statutorily required proportionality review, Stenson argued that the review conducted by this court was "too vague." *Stenson* I, 132 Wn.2d at 758. He asked us to adopt a more mathematical approach to comparing cases, but we rejected the request. Ultimately, we held that

> [w]e have compared this case and all the circumstances of the Defendant and his crime with other first degree aggravated murder[ ] [cases where the defendants] have [or] have not received the death penalty. Given the brutal, calculated nature of the crimes, the motivation of financial gain, and the lack of mitigating circumstances, we conclude the sentence was neither excessive nor disproportionate.

*Id.* at 760. The cases used for comparison were those "cases reported in the Washington Reports or Washington Appellate Reports since January 1, 1965, in which the judge or jury considered the imposition of capital punishment regardless of whether it was imposed or executed, and cases in which reports have been filed with the Supreme Court under RCW 10.95.120." *Id.* at 757 n.23.

¶4 In his first PRP, Stenson argued, unsuccessfully, that he received insufficient representation from his trial attorneys. He was represented in his first PRP by Ronald Ness and Judith Mandel who were appointed by this court. The Rules of Appellate Procedure (RAP) set particular requirements for attorneys who are appointed for a PRP in a capital case. RAP 16.25. Pursuant to these requirements, Ness and Mandel each filed a statement of qualifications

---

[2] While a recitation of the facts surrounding the commission of these murders is unnecessary for determination of the legal issues raised in this petition, a more complete recitation may be found at *Stenson* I, 132 Wn.2d at 677-82

with this court. Ness' statement provided, in pertinent part, that:

> I have been practicing since 1973, primarily in the area of criminal defense. I have done four (4) death penalty trials and over six (6) first degree aggravated murder trials. I have done criminal appellate work since becoming an attorney and have handled in excess of fifty (50) appellate cases. I was co-counsel on the death penalty appeal of *State v. Cal Coburn Brown*, cause number 61320-6. I have lectured in regard to death penalty work. I have been qualified in courts in the State of Washington regarding expert opinion in death penalty litigation.

Statement of Qualifications of Ronald D. Ness, *In re PRP of Stenson*, No. 66565-6, at 1 (Oct. 9, 1998). Mandel's statement of qualifications provided, in pertinent part, that:

> I was admitted to practice in 1978 and since admission to practice, I have focused on criminal defense. To date I have been involved in three (3) death penalty trials, five (5) first degree aggravated murder trials and two (2) death penalty appeals; State v. Cal Coburn Brown and State v. Dodd. I have been qualified as an expert in the area of death penalty litigation in courts in the State of Washington. I have given lectures in regards to death penalty litigation at seminars. I have done over thirty (30) appeals throughout my career in addition to the prior death penalty appeals.

Statement of Qualifications of Judith M. Mandel, *In re PRP of Stenson*, No. 66565-6, at 1-2 (Oct. 14, 1998). We rejected, on their merits, all of the arguments Stenson raised in this first PRP. *Stenson* II, 142 Wn.2d at 757.

¶5 In his second PRP, Stenson argued that (1) the database used to conduct his proportionality review was inaccurate, (2) the trial court misadvised him concerning his right to allocution, (3) the attorneys appointed for his first PRP lacked the required credentials, (4) one of the aggravating factors he was charged with was impermissibly vague, and (5) the prosecution withheld evidence. *Stenson* III, 150 Wn.2d at 210-11. Without discussing the merits of Stenson's claims, we dismissed his second PRP,

holding that it was procedurally barred as a "mixed peti-tion." *Id.* at 221. Specifically, we determined that Stenson's claim relating to allegedly withheld impeachment evidence did not rise to the level of "newly discovered evidence," an exception to the one-year procedural time bar imposed by RCW 10.73.090. *Id.* at 217, 220; *see* RCW 10.73.100.

¶6 Here, in Stenson's third PRP, he argues that the database we use to conduct proportionality review is inac-curate, and therefore, a new proportionality review is required.[3]

## II

¶7 For this court to grant relief by a personal re-straint petition, relief must be appropriate under RAP 16.4(d), which provides that

> [t]he appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73.090, .100, and .130. No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown.

We have stated that "[a] successive petition seeks ' "similar relief" ' if it either renews claims already ' "previously heard and determined" ' on the merits or raises ' "new" ' issues in violation of the abuse of the writ doctrine." *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 699, 9 P.3d 206 (2000) (quoting *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 492, 789 P.2d 731 (1990)). As noted above, the

---

[3] Stenson asserts additional claims in his PRP including: (1) his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) were violated; (2) his Sixth Amendment right to effective assistance of counsel was violated; (3) he has an Eighth Amendment right to an effective proportionality review, and this right was violated; (4) his equal protection rights were violated; and (5) his state constitutional right against the infliction of cruel punishment was violated. *See* Opening Br. at 15-24. Stenson, however, does not respond to the State's claim that raising these issues for the first time in his third PRP is an abuse of the writ. Because Stenson does not attempt to explain why these arguments are not barred by the abuse of the writ doctrine, they are not considered further.

State argues that Stenson's PRP is barred as an abuse of the writ.

¶8 The abuse of the writ doctrine states that "if the petitioner was represented by counsel throughout postconviction proceedings, it is an abuse of the writ for him or her to raise, in a successive petition, a new issue that was ' "available but not relied upon in a prior petition." ' " *Jeffries*, 114 Wn.2d at 492 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986)). The doctrine does not, however, apply if the claim is based upon intervening case law or upon newly discovered evidence, which would have probably changed the outcome of the trial or proceeding. *Id.* at 492-93. Stenson does not base this PRP on intervening case law. Thus, for the abuse of the writ doctrine to apply in this case, we must determine (1) whether Stenson was represented by counsel throughout his postconviction proceedings and (2) whether his claim is based on newly discovered evidence. We will discuss these two requirements in turn below.

## A. Postconviction Counsel

¶9 Stenson asserts that he was inadequately represented during his postconviction proceedings. More specifically, he argues that his attorneys for his first PRP did not have the credentials required by RAP 16.25 as they lacked experience handling a PRP in a capital case. The State responds that Stenson's attorneys were qualified, especially considering that RAP 16.25 does not require experience in collateral review.

¶10 After determining that Ness and Mandel met the requirements set forth in RAP 16.25, this court appointed them to represent Stenson in his first PRP. RAP 16.25 has remained unchanged since it was adopted on December 30, 1997, and provides, in pertinent part, that

[u]nless petitioner is proceeding pro se or is represented by retained counsel, . . . the Supreme Court shall appoint counsel to assist in preparing and presenting a first personal restraint

petition. Appointed counsel must have demonstrated the necessary proficiency and commitment which exemplifies the quality of representation appropriate to capital cases. At least one attorney so appointed must have at least three years of experience in handling *appeals or collateral reviews* on criminal convictions and must be learned in the law of capital punishment by training or experience.

(Emphasis added.) RAP 16.25 also states that "the Supreme Court will have the final discretion in the appointment of counsel in personal restraint petitions in capital cases."

¶11 Both parties agree that Ness and Mandel had significant experience with death penalty trials and direct appeals. However, neither attorney listed prior experience with a PRP. The issue, therefore, becomes whether prior PRP experience is a necessary qualification under RAP 16.25.

¶12 When interpreting court rules, this court will apply the rules of statutory construction. *City of Seattle v. Guay*, 150 Wn.2d 288, 300, 76 P.3d 231 (2003). Moreover, "[w]here the language of a rule is plain and unambiguous, the language will be given its full effect." *Id.* "Language in a court rule is unambiguous unless it is susceptible to more than one reasonable meaning." *Id.*

¶13 In this case, the court rule is unambiguous because it requires "at least three years of experience in handling *appeals or collateral reviews* on criminal convictions." RAP 16.25 (emphasis added). To adopt Stenson's interpretation of RAP 16.25, we would have to rewrite the rule to replace the word "or" with "and." Although Stenson argues that an attorney is only "learned in the law of capital punishment," as required by RAP 16.25, if he or she has PRP experience,[4] the rule does not contain such a restriction. As the rule states, the ultimate decision on appointment of PRP counsel is in the discretion of the Supreme Court. Stenson fails to establish that we abused our discretion by appointing Ness and Mandel, who both had consid-

---

[4] Opening Br. at 28.

erable experience handling appeals in capital cases. In our view, the appointment of Ness and Mandel for Stenson's first PRP was not in error, and thus, there is no basis for concluding that Stenson was inadequately represented during his postconviction proceedings.

## B. Newly Discovered Evidence

¶14 Stenson contends, additionally, that his PRP is not barred because it falls within the exception to the abuse of the writ doctrine for newly discovered evidence. For a petitioner to fall within the newly discovered evidence exception, he or she must establish

> "that the evidence (1) will probably change the result of the [proceeding]; (2) was discovered since the [proceeding]; (3) could not have been discovered before [the proceeding] by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching. The absence of any one of the five factors is grounds for the denial of a new" proceeding.

*In re Pers. Restraint of Brown*, 143 Wn.2d 431, 453, 21 P.3d 687 (2001) (quoting *State v. Williams*, 96 Wn.2d 215, 222-23, 634 P.2d 868 (1981)).

¶15 Stenson contends that the database of cases that we used to conduct his proportionality review was inaccurate and that this inaccuracy constitutes new evidence because Stenson's attorneys on appeal were justified in not realizing that the database was flawed. More to the point, Stenson argues that the database is invalid because it did not contain all aggravated murder cases.[5] Before we determine if the review of additional reports would probably change the result of Stenson's proportionality review, we must first determine which reports we are obligated to consider. If we are not obligated to consider these additional reports, then the additional reports are unlikely to change the result of Stenson's proportionality review.

---

[5] Stenson also argues that the database is invalid because if a death sentence was reversed, the trial report was not altered to reflect this change. We have previously considered and rejected this argument. *See State v. Elledge*, 144 Wn.2d 62, 79 n.5, 26 P.3d 271 (2001); *State v. Woods*, 143 Wn.2d 561, 613, 23 P.3d 1046 (2001).

 ¶16 The United States Constitution does not require states to engage in a proportionality review of death sentences. *Lewis v. Jeffers*, 497 U.S. 764, 779, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990). Washington has, however, decided to require proportionality review. RCW 10.95.130. "In conducting proportionality review the court is principally concerned with avoiding two systemic problems associated with [the] imposition of capital punishment: random arbitrariness and imposition of the death sentence in a racially discriminatory manner." *State v. Brown*, 132 Wn.2d 529, 554-55, 940 P.2d 546 (1997).[6]

 ¶17 We have refused to adopt a mathematical approach to conducting the proportionality review. *Stenson I*, 132 Wn.2d at 758. Instead, four factors are considered when comparing the defendant and crime to similar cases. *State v. Elmore*, 139 Wn.2d 250, 308, 985 P.2d 289 (1999). These factors are "(1) the nature of the crime, (2) the aggravating circumstances, (3) the defendant's criminal history and (4) the defendant's personal history." *Brown*, 132 Wn.2d at 555-56. Ultimately, "[i]f the facts of [the appellant's] case are similar to some of the facts taken from cases in which the death penalty was upheld, the proportionality review is satisfied." *Elmore*, 139 Wn.2d at 308. The review is to assure that the death penalty is not carried out in a "wanton or freakish" manner. *State v. Pirtle*, 127 Wn.2d 628, 688, 904 P.2d 245 (1995). Indeed, "[a]t its heart, proportionality review will always be a subjective judgment as to whether a particular death sentence fairly represents the values inherent in Washington's sentencing scheme for aggravated murder." *Id.* at 687.

¶18 Washington law provides, in relevant part, that

[i]n all cases in which a person is convicted of aggravated first degree murder, the trial court shall, within thirty days after the entry of the judgment and sentence, submit a report to the

---

[6] In Stenson's direct appeal, we stated that "[t]here is no claim of racial discrimination; the Defendant and both victims are Caucasian." *Stenson I*, 132 Wn.2d at 759.

clerk of the supreme court of Washington, to the defendant or his or her attorney, and to the prosecuting attorney which provides [specifically identified information concerning the defendant, crime, and proceedings].

RCW 10.95.120. Moreover, RCW 10.95.130(2) provides, in pertinent part, that

the supreme court of Washington shall determine:

. . . .

(b) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. For the purposes of this subsection, "similar cases" means cases reported in the Washington Reports or Washington Appellate Reports since January 1, 1965, in which the judge or jury considered the imposition of capital punishment regardless of whether it was imposed or executed, and cases in which reports have been filed with the supreme court under RCW 10.95.120.

¶19 The dissent asserts, as does Stenson, that in performing the proportionality review required by RCW 10.95.130(2)(b), this court was required to consider every report mandated by RCW 10.95.120, whether properly prepared and filed with this court or not. Dissent at 150-51 (stating that "[t]he clear statutory intent is that we consider all such reports."). The plain language of RCW 10.95.130 simply does not support that argument. The statute indicates that we are obligated to compare Stenson's case only to "cases in which reports *have been filed* with the supreme court under RCW 10.95.120." RCW 10.95.130(2)(b) (emphasis added). Stenson would have this court insert the word "should" into the statute. We will not add words to clear statutes. *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).[7] It is apparent, in other words, that the legislature did not intend that the failure of some RCW

---

[7] Amicus argues that the doctrine of lenity requires this court to construe the death penalty proportionality statute as requiring a review of all reports that should have been filed. Amicus Br. at 42. However, the rule of lenity requires this court only to interpret ambiguous criminal statutes in the defendant's favor. *State v. Martin*, 102 Wn.2d 300, 304, 684 P.2d 1290 (1984). As discussed above, RCW 10.95.130's language is clear.

10.95.120 reports to be properly prepared and filed should prevent this court from carrying out the proportionality review mandated by RCW 10.95.130(2)(b).

■■■ ¶20 To the extent that reports required by RCW 10.95.120 were not filed or were insufficiently answered, Stenson had the opportunity to raise this issue during his direct appeal. During Stenson's proportionality review, we considered all the reports that we were required to consider, and we will not now consider additional reports. Therefore, the additional reports do not fall within the exception for newly discovered evidence.[8]

### III

¶21 In sum, Stenson was adequately represented during his first PRP because his attorneys had significant experience in death penalty appellate litigation. Moreover, Stenson's third PRP does not fall within the exception to the abuse of the writ doctrine for newly discovered evidence. We, therefore, dismiss Stenson's PRP because it is barred under the abuse of the writ doctrine.

JOHNSON, MADSEN, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.

¶22 SANDERS, J. (dissenting) — The majority continues to approve use of an incomplete and inaccurate database to conduct the proportionality review required by the legislature in RCW 10.95.130. As in *State v. Elledge*, 144 Wn.2d 62, 90-91, 26 P.3d 271 (2001) (Sanders, J., dissenting), our proportionality review is corrupted by use of an inaccurate database skewed in favor of imposing death.

¶23 As the majority acknowledged, Washington's statutes require that trial courts submit reports on every conviction for aggravated first degree murder. Majority at

---

[8] Stenson fails to explain how the accuracy of the reports contained in the database constitutes "evidence." However, we do not reach this issue because Stenson is unable to establish that we should review these reports.

148-49 (citing RCW 10.95.120). The clear statutory intent is that we consider all such reports; otherwise the legislature would have provided for reporting of only a representative sample.

¶24 While the majority believes that the lack of the word "should" is dispositive, I believe that it clearly was not necessary for the legislature to have included the word in the statutory scheme. This is because the legislature already requires that *all reports* be submitted to us! The legislature can assume its statutory commands are carried out, and if they had been, there would have been no need to use the word "should." The simple instruction to review all the reports submitted includes the presumption that all reports would have been submitted, since that is what the statutory scheme requires.

¶25 Further, due process of law under the fourteenth amendment to the United States Constitution requires that when a state enacts a criminal statute, which sets out a procedure for the imposition of a particular penalty, a defendant has a "substantial and legitimate expectation" that he will be deprived of his liberty—and in this case his life—only if the state complies with the procedural requirements of that state statute. *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980). Since the legislature mandates that this court consider *all* relevant reports in conducting our proportionality review, and since the majority admits we have not done so, Darold Stenson's due process rights have been violated. This court should conduct a new proportionality review which complies with the statutory mandate and thus with the due process requirements of the Fourteenth Amendment.

¶26 I dissent.

FAIRHURST, J., concurs with SANDERS, J.