[No. 27501-1-I.    Division One.    July 29, 1991.]

BRIAN P. O'NEILL, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

*Michael J. Trickey,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gwendo-lyn Howard, Assistant,* for respondent.

PEKELIS, J. — Brian Patrick O'Neill contends that the trial court erred in affirming the Department of Licensing's decision revoking his driver's license for refusing to take a blood test. O'Neill asserts that the trial court

erred in denying his motion to dismiss and in failing to properly instruct the jury.[1]

I

On May 23, 1987, at approximately 2 a.m., a car Brian Patrick O'Neill was driving collided with three parked cars on the west side of Fourth Avenue. Seattle Police Officer Jose Cepeda was dispatched to the accident scene. He observed that O'Neill's passenger was injured and that there was a great deal of property damage to vehicles and city property.

Officer Cepeda spoke with O'Neill, O'Neill's passenger, and four other witnesses. Based on his investigation, Officer Cepeda concluded that prior to the impact O'Neill's car "was northbound on Fourth Avenue, coming from the right-hand-most lane across to the [left-hand]-most lane . . . towards the parked cars."

Officer Cepeda testified that O'Neill told him he had been driving approximately 30 to 38 m.p.h. and lost control of his car when another car changed lanes and cut him off. Officer Cepeda opined that he did not find O'Neill's explanation of the cause of the accident consistent with the information he obtained during his investigation. O'Neill objected, arguing that this testimony amounted to an expert conclusion which Officer Cepeda was not qualified to make. The trial court overruled O'Neill's objection.

Officer Cepeda summarized his observations when he approached O'Neill:

> I noticed a strong odor of an alcoholic beverage emitting from his breath and from his clothes.
> I noticed that when I spoke to him, his speech was somewhat thick-tongued, if you will, slurred, and his clothes and hair appeared to be messy. But I assumed at that initial contact with him that that was due to the accident.
> I noticed his eyes were watery, bloodshot. That is about all.

---

[1] This court stayed the suspension of O'Neill's license pending resolution of this appeal.

Lieutenant Brooks J. Bouillon, a member of the Seattle Fire Department, was also dispatched to the accident scene. After examining O'Neill and his passenger, Lieutenant Bouillon requested an aid car to transport O'Neill's passenger to the hospital.

According to Lieutenant Bouillon, O'Neill was "very offensive, belligerent, abusive; He obviously didn't want to be involved in an accident." Lieutenant Bouillon noted:

> [w]hen [O'Neill] walked, he wavered. When he talked, he slurred his voice. . . . It was very offensive to the point that we've all seen people when they're intoxicated — not all people, but some people, and they want to fight. That's the way Mr. O'Neill was at that point in time.

Officer Cepeda arrested O'Neill for driving while intoxicated and reckless driving. After his arrest, O'Neill complained of back pain and asked to see a doctor. Officer Cepeda took O'Neill to Harborview Medical Center. When they arrived, Officer Cepeda read O'Neill his implied consent warnings and asked him to submit to a blood test.[2] O'Neill refused. Officer Cepeda never gave O'Neill the opportunity to take a breath test and O'Neill never requested one.

Officer Cepeda subsequently booked O'Neill at King County Jail and submitted a report to the Department of Licensing. The Department revoked O'Neill's driver's license for refusing to take a blood test. A hearing examiner upheld the Department's decision.

O'Neill appealed to the Superior Court. After the State rested, O'Neill made a motion to dismiss arguing that the State had not met its burden to show the propriety of the license revocation. The trial court denied the motion.

---

[2]RCW 46.20.308 provides, in part:

"(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor."

O'Neill also objected to several jury instructions and to the trial court's failure to give an instruction O'Neill proposed.

The jury entered a verdict affirming the decision of the Department. On November 15, 1990, the trial court entered a judgment on verdict.

## II

On appeal, O'Neill contends first that the trial court erred in denying his motion to dismiss. O'Neill asserts that there is insufficient evidence that Officer Cepeda had probable cause to arrest him or reasonable grounds to believe he was driving under the influence of intoxicating liquor.

A lawful arrest is a prerequisite to the application of the implied consent statute. *Campbell v. Department of Licensing*, 31 Wn. App. 833, 837, 644 P.2d 1219 (1982). Under the implied consent statute, the State also has the burden to prove by a preponderance of the evidence that "the arresting officer ha[d] reasonable grounds to believe the person had been driving . . . a motor vehicle while under the influence of intoxicating liquor." RCW 46.20-.308; *Bell v. Department of Motor Vehicles*, 6 Wn. App. 736, 739, 496 P.2d 545 (1972).

The requirement of reasonable grounds is separate from the requirement of probable cause to arrest. *Fritts v. Department of Motor Vehicles*, 6 Wn. App. 233, 237-38, 492 P.2d 558 (1971). Here, however, because Officer Cepeda arrested O'Neill for driving while under the influence of intoxicating liquor, we analyze the two requirements together.

A police officer may arrest a person without a warrant upon probable cause to believe that the person has violated a traffic law such as reckless driving or driving while intoxicated. *Keefe v. Department of Licensing*, 46 Wn. App. 627, 635, 731 P.2d 1161, *review denied*, 108 Wn.2d 1018 (1987); RCW 10.31.100(3)(c), (d). "[P]robable cause to arrest exists where the totality of the facts and

circumstances known to the officers at the time of arrest would warrant a reasonably cautious person to believe an offense is being committed." *Waid v. Department of Licensing*, 43 Wn. App. 32, 34-35, 714 P.2d 681, *review denied*, 105 Wn.2d 1015 (1986).

Officer Cepeda concluded that O'Neill's car came from the right-handmost lane across to the left-handmost lane. O'Neill's passenger was injured and there was a "great amount" of damage to parked cars and city property. Both Officer Cepeda and Lieutenant Bouillon, who have prior experience with people under the influence of intoxicating liquor, testified that O'Neill appeared to be intoxicated. According to Lieutenant Bouillon, O'Neill "wavered" and "slurred his voice". When Officer Cepeda approached O'Neill he noticed "a strong odor of an alcoholic beverage emitting from his breath and from his clothes", O'Neill's eyes were "watery, bloodshot", and his speech was "thick-tongued" and "slurred".

O'Neill argues that this evidence in itself is insufficient. He contends further that the trial court abused its discretion by allowing Officer Cepeda to testify that O'Neill's explanation about the cause of the accident was inconsistent with his own conclusion.

This court will find an abuse of the trial court's discretion only where there is a clear showing that the discretion was exercised on manifestly unfair, unreasonable, or untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Officer Cepeda had been a police officer for approximately 4 years and he had "prior experience in handling DWI type incidents." Before reaching his conclusion, Officer Cepeda noted the location of the vehicles involved in the accident and spoke to O'Neill, O'Neill's passenger, and four other witnesses.

We conclude that the trial court properly exercised its discretion in allowing Officer Cepeda to testify that O'Neill's explanation about the cause of the accident was inconsistent with his own. Even without this testimony,

however, the record is replete with evidence that Officer Cepeda had probable cause to arrest O'Neill and reasonable grounds to believe he had been driving under the influence of intoxicating liquor.[3]

Thus, the trial court did not err in denying O'Neill's motion to dismiss.

## III

O'Neill next contends that the trial court erred in refusing to instruct the jury that the State had the burden to prove, by a preponderance of the evidence, that O'Neill was in a medical facility in which he was being treated and in which no breath testing instrument was available.

RCW 46.20.308 provides, in part:

(2) *The test or tests of breath shall be administered* at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor. *However, in those instances where*: (a) The person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample; *or* (b) *as a result of a traffic accident the person is being treated for a medical condition in a hospital, clinic, doctor's office, or other similar facility in which a breath testing instrument is not present, a blood test shall be administered* by a qualified person as provided in RCW 46.61.506(4). The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

(Italics ours.)

---

[3]We reject O'Neill's argument that Officer Cepeda arrested him on the pretext of his refusal to submit to field sobriety tests. Although Officer Cepeda's testimony about the relationship between his decision to arrest O'Neill and O'Neill's failure to perform field sobriety tests is confusing, this testimony does not stand alone. The physical evidence as well as Officer Cepeda's and Lieutenant Bouillon's observations provide overwhelming evidence of intoxication to persuade an officer that there was probable cause to arrest O'Neill for driving while intoxicated.

O'Neill asked the trial court to give his proposed instruction 11, which stated:

You are instructed that the respondent Department of Licensing has the burden of proving by a preponderance of the evidence that there was no breath testing device present in the Harborview Medical Center on May 23, 1987 when petitioner Brian O'Neill was asked to submit to a blood test.

The trial court refused to so instruct the jury, ruling:

I'm not giving that instruction, but I'm not precluding you from giving that argument.

You can both argue that, but I'm not finding as a matter of law that it is the state's burden to prove that. I think there's room to argue either way.

The trial court gave its instruction 4, which instructed the jury on the burden of proof as follows:

The Department of Licensing has the burden of proving that: (1) The petitioner-appellant was arrested by a law enforcement officer, who, at the time of the arrest, had reasonable grounds to believe that the petitioner was driving a motor vehicle upon the public highways while under the influence of intoxicating liquor; (2) That the law enforcement officer fully advised the petitioner-appellant of his rights under the implied consent law and of the consequences of exercising his rights under the law; (3) That the petitioner-appellant refused the breath or blood test; and (4) That the petitioner was advised that his refusal to take the breath or blood test may be used against him in any subsequent criminal trial. If you find from your consideration of all the evidence that each proposition has been proven, your verdict must be for the respondent, the Department of Licensing. If, however, you find from your consideration of all the evidence that any proposition has not been proven, your verdict must be for the petitioner.

During the course of its deliberations, the jury asked:

(1) According to law must a breath test be offered first.
(2) What time was he offered the blood test.
(3) If offered a blood test first, does this mean he is no longer able to submit to a breath test.
(4) Legal definition of examination and treatment.

The trial court declined to answer the jury's questions.

■ ■ The test for reviewing jury instructions is "whether the instructions, read as a whole, allow counsel

to argue their theory of the case, are not misleading, and properly inform the trier of fact of the applicable law." *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985). Erroneous instructions given on behalf of a party in whose favor the verdict is returned are presumed prejudicial unless it is affirmatively shown that they were harmless. *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984).

■ RCW 46.20.308(2) provides that a breath test should be administered unless the person is incapable of providing a breath sample *or is being treated for a medical condition in a facility in which a breath testing instrument is not present*. Although the statute allows an arresting officer to request both breath and blood tests, it does not leave the choice between the two to the arresting officer's discretion. Instead, it states specific conditions which must be met before a blood test may be administered in lieu of a less intrusive breath test.

Officer Cepeda testified that O'Neill was capable of taking a breath test. The only evidence on the question whether breath testing equipment was available at Harborview was Officer Cepeda's testimony. He conceded that he did not check whether Harborview had a breath testing instrument, but he did not "believe" that it did. Officer Cepeda also added that he usually administers breath tests at the police station.

The trial court instructed the jury that the State must prove that O'Neill refused to take a blood test. Yet, the trial court did not instruct the jury that Officer Cepeda could not offer O'Neill a blood test unless he was incapable of taking a breath test or was being treated in a facility in which no breath testing equipment was present. Thus, the jury instructions allowed the jury to find for the State without deciding that the State had sufficiently proved that these conditions were met.

Although O'Neill argued to the jury that the State had not shown that O'Neill was treated in a facility in which no breath testing instrument was present, without an

explanatory instruction by the court, the jury could not properly evaluate O'Neill's argument. Moreover, the jury's confusion over the discrepancy between the court's instructions and O'Neill's argument is evidenced in the questions it submitted to the court.

In sum, the instructions as a whole were misleading and did not properly inform the jury of the applicable law. We hold that although it is not a required element of the State's case in every instance, where there is an issue of fact on the presence of a Breathalyzer at a particular medical facility, the State has the burden to prove that one was not present. Because the jury found for the State, the trial court's failure to give O'Neill's proposed instruction 4 is presumed to be prejudicial. *See Rice*, 102 Wn.2d at 123. Here, the nature of the error as well as the jury's questions lend support to our conclusion that the error prejudiced O'Neill.[4]

Accordingly, we reverse and remand.

COLEMAN and BAKER, JJ., concur.

---

[4] O'Neill also contends that the trial court erred in giving instruction 11, which stated:

An arrested person, who is asked to take a breath test, must have had an opportunity to exercise his intelligent judgment in making the decision on whether or not to take the breath test. If that person has been advised of his rights under the implied consent law, he has been given the opportunity to exercise his intelligent judgment unless he objectively and unequivocally manifests that he does not understand and is denied clarification.

We agree. Although instruction 11 does not misstate the law, it is not warranted under the facts of this case. The instruction refers to a "breath" test rather than a "blood" test. Furthermore, O'Neill did not raise a "confusion" defense. Thus, the instruction is not only irrelevant, but misleading and should not be given on retrial.