[No. 14570-7-II. Division Two. February 11, 1993.]

WILLIAM LAUREN SHELDEN, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

682

*Roger A. Hunko* and *Wecker, Hunko,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Derek L. Edwards, Assistant,* for respondent.

PETRICH, J. — William Shelden appeals from a superior court decision affirming the Department of Licensing's revocation of his driver's license for his refusal to submit to a blood test after a 1-car accident. Shelden contends that under the circumstances, the law only required him to take a breath test, not a blood test, and consequently, the Department improperly revoked his license. We agree and reverse.

On April 7, 1988, William Shelden drove his 1971 Chevy Nova off the right side of Tracyton Beach Road on his way toward Bremerton. The car ended up in the water and Shelden was transported to Harrison Hospital by ambulance. State Patrol Sergeant Robert Thurston went to the scene of the accident, waited for a tow truck, and then went to the hospital to talk to Shelden. He found Shelden in an emergency room dressed only in a hospital gown; Shelden's wet clothing lay on the floor. Shelden, upon questioning, admitted he had been drinking so Thurston began administering field sobriety tests. Based on a sway test and a gaze nystagmus test, Thurston determined that Shelden was under the influence (Shelden's knee was bothering him so further tests were not possible). Shelden admitted at first that he had consumed three beers, but eventually acknowledged drinking four pitchers of beer.

Thurston advised Shelden of his constitutional rights and arrested him. He then read Shelden the implied consent warning, which both he and Shelden signed. Thurston next asked Shelden to submit to a blood test. Shelden refused. When Thurston left the hospital about a half hour later, Shelden was still in his gown in the treatment room. Thurston filled out a report of refusal to submit to a blood or breath test and sent it to the Department of Licensing.

Upon receiving the report of refusal to submit to a blood or breath test, the Department sent Shelden a notice of revocation. Shelden requested a formal hearing, at which the hearings examiner upheld the revocation. On appeal, Shelden had a de novo hearing in superior court, in which the court upheld the revocation. Shelden now appeals.

When there is probable cause to arrest for DWI, the police are constitutionally permitted to draw and test the driver's blood for alcohol, using appropriate medical methods. *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *South Dakota v. Neville*, 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983). Whether a driver has a right to refuse is a matter of legislative grace, and whatever right the Legislature chooses to grant may be constitutionally conditioned. *Neville*, 459 U.S. at 560-65; *State v. Long*, 113 Wn.2d 266, 272,

778 P.2d 1027 (1989). The Washington Legislature has seen fit to provide that a driver arrested for DWI must be afforded an opportunity to make a knowing and intelligent decision on whether to take or refuse a breath test. *State v. Bartels*, 112 Wn.2d 882, 886, 774 P.2d 1183 (1989); *State v. Whitman Cy. Dist. Court*, 105 Wn.2d 278, 281-82, 714 P.2d 1183 (1986); *Welch v. Department of Motor Vehicles*, 13 Wn. App. 591, 592, 536 P.2d 172 (1975). However, it has also seen fit to provide that such opportunity is adequately afforded by giving the warnings set forth in RCW 46.20.308(2).

(Footnote omitted.) *Burnett v. Department of Licensing*, 66 Wn. App. 253, 258-59, 832 P.2d 1321 (1992).

RCW 46.20.308(2) provides:

The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor. However, in those instances where: (a) The person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample; *or (b) as a result of a traffic accident the person is being treated for a medical condition in a hospital, clinic, doctor's office, or other similar facility in which a breath testing instrument is not present, a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4).* The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

(Italics ours.)

▮ Shelden contends the State failed to produce evidence satisfying these statutory conditions for a blood test. He argues that the State failed to prove that Shelden was "being treated" and that the hospital was a "facility in which a breath testing instrument is not present". This court reviews factual determinations by looking to the record to see if substantial evidence supports them:

Our review is limited to determining whether the trial court's findings are supported by substantial evidence, and, if

so, whether the findings in turn support the conclusions of law. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 483, 670 P.2d 648 (1983). We need determine only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict. *North Pac. Plywood, Inc. v. Access Road Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482, *review denied*, 96 Wn.2d 1002 (1981). Findings of fact supported by substantial evidence will not be reversed on appeal. *Funderburk v. Bechtel Power Corp.*, 103 Wn.2d 796, 799, 698 P.2d 556 (1985).

*Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 212, 716 P.2d 911 (1986). "Substantial evidence is that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." *Dravo Corp. v. L.W. Moses Co.*, 6 Wn. App. 74, 81, 492 P.2d 1058 (1971) (citing *Becker v. Tacoma Transit Co.*, 50 Wn.2d 688, 690, 314 P.2d 638 (1957)), *review denied*, 80 Wn.2d 1010 (1972).

■ The trial court made oral findings that the officer reasonably believed that Shelden was "being treated" in the hospital and that the officer reasonably believed that a breath testing instrument was unavailable in the hospital. However, the trial court did not make written findings as required under CR 52(a)(1). Nonetheless, because the statutory requirements, the record, and the court's opinion are clear, we will consider its oral findings rather than remand for the entry of formal findings. *See Peoples Nat'l Bank v. Birney's Enters., Inc.*, 54 Wn. App. 668, 775 P.2d 466 (1989) (court admonishingly denominates trial court's oral remarks as findings).

## I
### "BEING TREATED"

Shelden contends that the State failed to present evidence that while he was in the hospital after the accident he was "being treated" as required under RCW 46.20.308(2). We disagree. Thurston testified that he first saw Shelden in a hospital treatment room, in a hospital gown, and Shelden mentioned that his knee hurt. Shelden's own testimony was

that he injured his knee and that someone looked at it after Thurston left:

Q: You stated that a nurse came in prior to the trooper showing up?
A: Before, yes, someone did. They come in and gave me a gown and drew some blood from me and then the officer showed up.
Q: Did she look at your knee at that time?
A: I don't remember if she did or not.
Q: Did a doctor look at your knee after the Trooper left?
A: Someone did.

Clearly, the medical facility was providing Shelden with treatment for his injured knee.

## II
### AVAILABILITY OF BREATH TESTING INSTRUMENT

■ Shelden also contends that the State failed in its burden to prove the unavailability of breath testing equipment. Interpreting the same language of RCW 46.20.308(2) as applicable here, Division One of this court said:

Although the statute allows an arresting officer to request both breath and blood tests, it does not leave the choice between the two to the arresting officer's discretion. Instead, it states specific conditions which must be met before a blood test may be administered in lieu of a less intrusive breath test.

*O'Neill v. Department of Licensing*, 62 Wn. App. 112, 120, 813 P.2d 166 (1991). "We hold that although it is not a required element of the State's case in every instance, where there is an issue of fact on the presence of a Breathalyzer at a particular medical facility, the State has the burden to prove that one was not present." *O'Neill*, at 121. Although the State presented evidence of the absence of a Breathalyzer at Harborview hospital, the *O'Neill* court said that it was prejudicial error not to instruct the jury that certain conditions must be met before an officer can request a blood test. *O'Neill*, at 121.

Here, the trial court, in finding for the State, said:

[I]f this officer has done hundreds of these cases and he goes to Harrison Hospital and asks for a blood test then I feel I can

reasonably conclude that at least in his mind there is not a certified breath testing machine there.

The record does not support this finding. There is no evidence in the record about whether Officer Thurston believed or disbelieved that the hospital had a breath analysis instrument. While there is evidence that the officer had worked on hundreds of cases involving driving under the influence, there is no evidence that any of these cases involved giving blood draws at Harrison Memorial Hospital. According to Thurston's testimony, he and Shelden read and signed the implied consent form. Then Thurston asked the nurse to do a blood draw, but Shelden refused. There is no evidence that Thurston asked if a breath analysis instrument was available or whether he knew that the hospital did not have one. Hence, even were this court to remand for formal findings, the record would not support a finding that a breath analysis instrument was unavailable.

The State failed to meet its burden to establish the statutory conditions precedent to requiring a blood test. The order revoking Shelden's driver's license is reversed.

SEINFELD, A.C.J., and MORGAN, J., concur.