197 P.3d 1198 (2008)
STATE of Washington, Appellant,
v.
Abdinasir OSMAN, Respondent.
No. 60359-1-I.
Court of Appeals of Washington, Division 1.
December 22, 2008.
*1200 Christina Miyamasu, Seattle, WA, for Petitioner.
Edward A. Nelson, Federal Way, WA, Christine Anne Jackson, The Public Defender, Seattle, WA, for Respondent.
SCHINDLER, C.J.
¶ 1 In courts of limited jurisdiction, all proceedings are electronically recorded. Under RALJ 5.4, a party is entitled to a new trial if "any significant or material portion" of the electronic record is lost or damaged. RALJ 5.4 expressly delegates to the court of limited jurisdiction the authority to determine whether the missing portion of an electronic trial record is significant or material and grounds for a new trial. RALJ 5.4 provides that the court's decision is subject to review by the superior court. In this case, Abdinasir Osman filed a motion challenging the district court's determination that the missing portion of a pretrial hearing was not significant or material and requested a new trial. The superior court disagreed with the district court, found that the missing portion of the pretrial hearing was material, and ordered a new trial. We granted the State's motion for discretionary review to address the question of what standard of review applies to the district court's determination under RALJ 5.4. We conclude that under the plain language of the rule, the standard of review is abuse of discretion. Because the superior court applied a de novo standard of review, we reverse the superior court's finding that the missing portion of the record was material, and remand.

FACTS
¶ 2 In April 2004, Abdinasir Osman was charged in King County District Court with driving while under the influence of alcohol (DUI). Before trial, the defense filed a motion to exclude evidence under CrRLJ 3.5 and a motion to suppress evidence under CrRLJ 3.6. Osman argued there was no lawful basis to stop and no probable cause to arrest him. Osman also argued that all statements that he made to the arresting officer, as well as his refusal to submit to an alcohol breath test, were inadmissible. Osman asserted that he did not understand English and the arresting officer did not ask him if he understood his constitutional rights or the implied consent warnings for a breath test.
¶ 3 The hearing on Osman's motion to suppress took place on January 12, 2005. King County Deputy David L. Jeffries and Osman testified. Osman testified with the assistance of a Somali interpreter.
¶ 4 Deputy Jeffries testified that he had worked for the King County Sheriff's Department for approximately 15 years, he had been a member of the DUI squad for approximately 10 years, he had participated in approximately 5,000 DUI investigations, and had made approximately 1,400 DUI arrests. Deputy Jeffries also said that he was an alcohol breath test instructor and a DUI field training officer.
¶ 5 Deputy Jeffries testified that at approximately 2:50 a.m. on October 17, 2003, he observed a car in the White Center area weaving between two lanes of traffic on South 200th Street. Deputy Jeffries said that the car was crossing over the lane dividers, and on two different occasions, crossed the centerline. According to Deputy Jeffries, the driver had his right turn signal on at an intersection. However, the driver did not turn, but went straight onto the freeway. After the car drove onto the shoulder of the freeway and across the fog line, Deputy Jeffries pulled the car over. Deputy Jeffries asked the driver for his license, registration, and proof of insurance. Deputy Jeffries testified that the driver, Abdinasir Osman, had "a strong odor of intoxicants on his breath, red, watery, bloodshot eyes, slurred speech, and ... slow, lethargic movements." Deputy Jeffries also said there were two other people in the car and he noticed four open beer containers in the front passenger seat.
*1201 ¶ 6 According to Deputy Jeffries, Osman voluntarily agreed to perform some field sobriety tests. Deputy Jeffries said that as Osman got out of the car, he used the side of the car to steady himself. Based on the "horizontal gaze nystagmus" test, Deputy Jeffries concluded that Osman had consumed alcohol. When Deputy Jeffries asked Osman if he wanted to perform the "walk and turn" test, Osman said he was fine and he did not need to do another test. Deputy Jeffries then arrested Osman and read him his constitutional rights. Deputy Jeffries testified that Osman told him that he understood those rights. Deputy Jeffries said that he also read Osman the implied consent warnings for an alcohol breath test and that Osman told him that he understood the warnings. Deputy Jeffries testified that Osman continued to insist that he was fine and "he told me that he had only drank two beers.... And that he was okay to drive." Deputy Jeffries also testified that four open beer containers in the car were still "cold and wet to the touch" after the car was impounded.
¶ 7 Deputy Jeffries testified that he read Osman his rights and the implied consent warnings for the breath alcohol test again at the SeaTac Police Station. Osman refused to sign the "Constitutional Rights and Implied Consent Warning for Breath" form, and asked to speak to his attorney. Because Osman would not provide the name of his attorney, Deputy Jeffries contacted a public defender for him. After Osman spoke with the public defender, Osman told Deputy Jeffries he did not want to take the alcohol breath test.
¶ 8 Deputy Jeffries testified that Osman communicated with him in English the entire time. In his DUI report, Officer Jeffries wrote that Osman's native language was English. On cross examination, Deputy Jeffries said that both Osman and the two passengers spoke to him in English that night.
¶ 9 Osman testified that he was from Somalia, had only been in the United States for three years, and had never formally learned English. Osman said that he and his two friends had attended a Somali wedding in downtown Seattle that night. Osman disagreed with Deputy Jeffries's account of what occurred after Deputy Jeffries pulled him over. Osman testified that he did not understand Deputy Jeffries and that when Deputy Jeffries stopped the car, one of the passengers, Chambe Hailesellase, translated for him. Osman also said that he asked Deputy Jeffries for a Somali interpreter several times. Osman denied using English when he spoke to Deputy Jeffries, and denied telling Deputy Jeffries that he only had two beers and was okay to drive. Osman testified that Deputy Jeffries did not read him his rights when he was arrested or later at the police station.
¶ 10 For the limited purpose of the CrRLJ 3.5 and CrRLJ 3.6 hearing, the court admitted Exhibit A, the advice of constitutional rights and the implied consent warnings for a breath test; Exhibit B, Osman's driver's license; Exhibit C, King County Department of Adult Detention (KCDAD) screening information; and Exhibit D, a judgment and sentence in King County District Court for a previous reckless driving conviction of Osman in 2004. Exhibits C and D were admitted over defense objection. Exhibit C indicates that KCDAD interviewed Osman in 2003 to verify his residential and employment history. According to the information in Exhibit C, Osman moved to Washington from California and had been employed as a shuttle driver for two years. Exhibit D, the 2004 judgment and sentence, imposes a number of conditions on Osman, including a requirement to attend Alcohol Information School.
¶ 11 At the conclusion of the hearing, the court ruled that Deputy Jeffries had probable cause to stop and to arrest Osman and that Osman's statement that he had two beers and was okay to drive was admissible. However, the court granted Osman's motion to suppress the statements that he made after he refused to sign the advice of rights form and he invoked his right to an attorney. The court also suppressed evidence of Osman's refusal to submit to the alcohol breath test.
¶ 12 The trial took place on February 24, 2005. Deputy Jeffries and one of the passengers in Osman's car, Hailesallase, testified at *1202 trial.[1] A jury found Osman guilty of driving while under the influence of alcohol. The court imposed a one-year suspended sentence and ordered Osman to participate in alcohol treatment. Osman filed an appeal in King County Superior Court. Under the Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ), the superior court sits in an appellate capacity for all final decisions in courts of limited jurisdiction.
¶ 13 In preparing Osman's appeal, his attorney discovered that a portion of the electronic record from the pretrial CrRLJ 3.5 and CrRLJ 3.6 hearing was missing. Osman filed a motion under RALJ 5.4, arguing that he was entitled to a new trial because the missing portion of the record was significant or material. The superior court remanded to the district court to determine whether the missing portion of the electronic record was significant or material. The order states, "RALJ 5.4 delegates to the court of limited jurisdiction the authority to determine ... whether the lost portion of the record is material and significant, given the rulings from that lost portion are reflected in the docket."
¶ 14 It is undisputed that the end of the State's cross examination of Osman, the redirect of Osman, the court's ruling on the admission of Exhibit D, the lawyers' arguments, and the court's oral decision and rulings on the motion to suppress were not electronically recorded. The transcript indicates that the motion to suppress hearing began at 10:20 a.m. and there is a "[Break in recording from 11:47:47 a.m.]." The transcript of the electronic record resumes at "1:00:30 p.m." The hearing concluded at 1:13 p.m., "[Session ends at 1:13 p.m.]."
¶ 15 The court docket reflects the court's rulings on the CrRLJ 3.5 and CrRLJ 3.6 motion to suppress, followed by the State's request that Osman be taken into custody. According to the docket, the court noted that Osman was charged with a new DUI, ordered him taken into custody, and set bail. At Osman's request, the court also authorized funds for additional interpreter fees. When the electronic recording resumes, the court is considering Osman's motion to continue the trial.[2]
¶ 16 On the remand from superior court, the district court judge compared his notes from the CrRLJ 3.5 and CrRLJ 3.6 hearing with the court docket to determine whether the missing portion of the electronic record was significant or material and required a new trial. In doing so, the judge noted that the court docket "is I think quite extensive compared to many dockets in other courts in terms of memorializing the reasons and decisions." In response to Osman's insistence that "the court has a duty to make a record," the judge read his notes into the record. The notes describe Deputy Jeffries's and Osman's testimony at the suppression hearing, the exhibits that were admitted, and the court's rulings. The district court judge ruled that the missing portions of the electronic record were not significant or material.
¶ 17 Osman filed a motion in superior court to review the district court's determination that the missing portion was not significant or material under RALJ 5.4. Osman argued that "[i]nstead of merely determining whether the missing portion was material, the district court judge attempted to re-construct the record from his notes and the docket entries." The superior court reversed the district court's determination and remanded "for a new trial pursuant to RALJ 5.4." The superior court ruled that "[h]aving considered the briefing and arguments of both sides the court in this instance does find the missing portions of the transcript to be material."[3]
¶ 18 A commissioner of this court granted the State's motion for discretionary review to address the question of what standard of review applies when the superior court reviews a district court's determination of *1203 whether missing portions of the electronic record are significant or material under RALJ 5.4.

ANALYSIS
¶ 19 The parties dispute whether the superior court applied the correct standard of review when reversing the district court's determination that the missing portion of the CrRLJ 3.5 and CrRLJ 3.6 hearing was not significant or material.
¶ 20 As a general rule, all proceedings in a court of limited jurisdiction "shall be recorded by electronic means." RALJ 5.1. Under RALJ 4.1, the superior court has the authority to perform all acts necessary to review a case on appeal.[4] After an appeal is filed, the district court only has authority to act as provided in the RALJ rules. RALJ 4.1. RALJ 5.4 delegates to the court of limited jurisdiction the authority to determine whether the missing portions of the electronic record are material or significant:
In the event of loss or damage of the electronic record, or any significant or material portion thereof, the appellant, upon motion to the superior court, shall be entitled to a new trial, but only if the loss or damage of the record is not attributable to the appellant's malfeasance. In lieu of a new trial, the parties may stipulate to a nonelectronic record as provided in rule 6.1(b). The court of limited jurisdiction shall have the authority to determine whether or not significant or material portions of the electronic record have been lost or damaged, subject to review by the superior court upon motion.
¶ 21 The State contends that the superior court erred in reversing the district court's determination that the missing portion of the record was significant or material based on a de novo standard of review. The State asserts that because RALJ 5.4 expressly delegates that determination to the trial court, the standard of review is abuse of discretion. Citing cases holding that the application of a court rule to a particular set of facts is subject to de novo review, Osman argues that the standard of review for the district court's determination under RALJ 5.4 is de novo. Osman also asserts that the superior court correctly found the missing portion of the record was significant or material under RALJ 5.4.
¶ 22 The interpretation of a court rule is a question of law that we review de novo. State v. Robinson, 153 Wash.2d 689, 693, 107 P.3d 90 (2005). When interpreting a court rule, we apply the rules of statutory construction. In re Pers. Restraint of Stenson, 153 Wash.2d 137, 147, 102 P.3d 151 (2004). If the language of a court rule is plain and unambiguous, the court must give effect to that plain meaning. In re Stenson, 153 Wash.2d at 146, 102 P.3d 151. The use of the word "shall" is presumptively mandatory. State v. Mollichi, 132 Wash.2d 80, 86, 936 P.2d 408 (1997). Court rules must also be interpreted "so that `no word, clause or sentence is superfluous, void or insignificant.'" State v. Dassow, 95 Wash.App. 454, 458, 975 P.2d 559 (1999) (quoting State v. Raper, 47 Wash.App. 530, 536, 736 P.2d 680 (1987)).
¶ 23 We conclude the language of RALJ 5.4 is clear and unambiguous. Under the plain language of RALJ 5.4, an appellant is entitled to a new trial if a "significant or material portion" of the electronic record is lost or damaged.[5] But the rule expressly delegates to the district court the authority to determine whether the lost or damaged portion of the electronic record justifies a new trial. This makes sense because the trial court is in the best position to determine *1204 if the missing portion is significant or material and is grounds for a new trial.[6]
¶ 24 Using a de novo standard of review for the trial court's determination of whether the missing portions of the electronic record are significant or material is contrary to the clear language of the rule that mandates remand to the court of limited jurisdiction to make that determination. The cases Osman cites such as State v. Frankenfield, 112 Wash.App. 472, 475, 49 P.3d 921 (2002), City of College Place v. Staudenmaier, 110 Wash. App. 841, 43 P.3d 43 (2002), and State v. Dearbone, 125 Wash.2d 173, 178-79, 883 P.2d 303 (1994), are inapposite. Those cases stand for the proposition that when the trial court bases an otherwise discretionary decision solely on the application of a court rule to particular facts, the decision is reviewed de novo as a question of law. Here, the court did not just apply the rule to a particular set of facts, but rather exercised its discretion under RALJ 5.4 in determining whether the missing portion was significant or material in the context of the trial.
¶ 25 We conclude that an abuse of discretion standard of review applies to the decision of a court of limited jurisdiction of whether missing portion of the record is significant or material under RALJ 5.4. Consequently, we hold that the superior court erred in applying a de novo standard of review and impermissibly exceeded its authority by substituting its judgment for that of the district court and finding the missing portion of the record was significant and material under RALJ 5.4. Glaefke v. Reichow, 51 Wash.App. 613, 614-15, 754 P.2d 1037 (1988) (if the superior court substitutes its judgment for the district court, it exceeds its limited scope of review).
¶ 26 Even if the correct standard of review of the decision under RALJ 5.4 is abuse of discretion, Osman contends the district court's determination that the missing portion of the pretrial suppression hearing is not significant or material was an abuse of discretion. A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State ex rel Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 27 First, Osman contends that in deciding whether the missing portion of the record was significant or material, the district court impermissibly reconstructed the record. We disagree. The record reveals that the district court judge did not reconstruct the record, but rather compared his notes with the court docket to determine whether the missing portion was significant and material under RALJ 5.4.
¶ 28 RALJ 5.4 does not address a preferred procedure for a court of limited jurisdiction to determine whether the missing portion of an electronic record is significant or material. However, by delegating that determination to the court of limited jurisdiction, the rule recognizes the trial court's critical role in making that decision and accordingly gives the court discretion to fashion an appropriate procedure. Here, the court docket sets forth in detail the district court's findings and conclusions on the motion to suppress under CrRLJ 3.5 and CrRLJ 3.6. The court did not abuse its discretion by reviewing the court docket and the judge's notes from the hearing to determine whether the missing portion of the record was significant or material.
¶ 29 Osman also contends that the district court erred because the missing portion of the record that contains the court's findings and oral decision on the CrRLJ 3.5 and CrRLJ 3.6 motion to suppress is significant and material for purposes of the RALJ appeal. We disagree.
¶ 30 As reflected in the court docket, the court ruled that Deputy Jeffries had probable cause to stop the car and to arrest Osman and that Osman's statement that he had two beers and was okay to drive was admissible, *1205 but any statements that Osman made after he invoked his right to an attorney were suppressed, and Osman's refusal to submit to the breath alcohol test was suppressed. The court docket states:
Court finds defendant was read his rights in the field and understood his rights in the field. Statements made thereafter are admissible. Statements made are a waiver by conduct that includes the fact that he stated he had 2 beers and was okay to drive.
Court finds that the defendant was read his rights at the SeaTac facility and that he invoked his rights and any statements made after the second reading of rights are suppressed.
Court finds implied consent warnings for breath were read to defendant in the field and at the SeaTac facility. Court is not satisfied that defendant understood his rights. Therefore, BAC refusal is suppressed.
Court finds that there was probable cause to stop defendant based on the defendant's driving observed by Officer Jeffries.
Court finds probable cause to arrest defendant.
¶ 31 The district court's decision that Osman's statement that he had two beers and was okay to drive was admissible and that Deputy Jeffries had probable cause to stop the car and arrest Osman are the only rulings adverse to Osman. It is clear from the record that the district court admitted Osman's statement based on finding Deputy Jeffries's testimony that he read Osman his constitutional rights and that Osman understood his rights more credible than Osman's testimony.[7] "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
¶ 32 The only other pretrial decisions subject to a RALJ appeal are the district court's rulings that Deputy Jeffries had probable cause to stop and to arrest Osman. On appeal of denial of a motion to suppress, findings are reviewed for substantial evidence and the conclusions of law derived from those findings are reviewed de novo. State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001).[8] A de novo standard of review also applies to the question of whether the stop was valid. State v. Byrd, 110 Wash.App. 259, 262 n. 2, 39 P.3d 1010 (2002).
¶ 33 To justify an investigative stop of an automobile, the police officer must have reasonable and articulable suspicion that the person is engaging in criminal activity. State v. Kennedy, 107 Wash.2d 1, 5, 726 P.2d 445 (1986). The analysis focuses on "the reasonableness of the officer's activities with respect to the privacy rights invaded." Kennedy, 107 Wash.2d at 6, 726 P.2d 445. A court must evaluate the reasonableness of the officer's suspicion under the totality of the circumstances known to the officer at the time of the stop. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991).
¶ 34 A police officer may arrest a person without a warrant based on probable cause to believe that the person has violated a traffic law such as reckless driving or driving while intoxicated. O'Neill v. Dep't of Licensing, 62 Wash.App. 112, 116, 813 P.2d 166 (1991). Probable cause to arrest exists if, under the circumstances, a reasonably cautious person would believe an offense is being committed. O'Neill, 62 Wash.App. at 116-17, 813 P.2d 166. Courts give consideration to the arresting officer's special expertise in identifying criminal behavior. State v. Scott, 93 Wash.2d 7, 11, 604 P.2d 943 (1980).
¶ 35 Here, the court docket contains the district court's findings and conclusions and the record contains all of Deputy Jeffries's testimony, Osman's direct examination, and nearly all of Osman's cross examination. This record allows Osman to challenge whether Deputy Jeffries had probable cause to stop and to arrest.
*1206 ¶ 36 Osman also argues that the district court abused its discretion in ruling that the missing portion of the transcript is not significant or material because there is an inherent contradiction created by the district court's decision that Osman understood the Miranda[9] warnings but did not understand the implied consent warnings for an alcohol breath test. We disagree. While the Miranda warnings are straightforward and easy to understand, the implied consent warnings are not. The record also shows that because Osman exercised his right to an attorney after Officer Jeffries read the Miranda warnings, he understood those rights.
¶ 37 Last, Osman contends that without the missing portions of the record, his attorney cannot provide effective assistance of counsel on appeal. Due process requires a record "of sufficient completeness" to properly consider the assignments of error on appeal. Draper v. Washington, 372 U.S. 487, 497, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); State v. Larson, 62 Wash.2d 64, 66-67, 381 P.2d 120 (1963). Whether the record is sufficient for appellate review is a separate question from whether a missing portion of the record is significant or material under RALJ 5.4. The absence of a portion of the record does not violate due process unless Osman can demonstrate prejudice. State v. Miller, 40 Wash.App. 483, 488, 698 P.2d 1123 (1985). On remand, Osman must demonstrate how in the absence of the missing portion of the record, he is prejudiced.
¶ 38 We reverse the superior court decision finding the missing portion of the record is significant and material under RALJ 5.4 and remand.
WE CONCUR: ELLINGTON and BECKER, JJ.
NOTES
[1] The parties did not designate the transcript of the trial on appeal. However, the table of contents of the transcript indicates that at trial Deputy Jeffries testified about reading Osman his rights and the court ruled on the "Miranda rights and the implied consent warnings."
[2] Over the State's objection, the court continued the trial to February 18, 2005.
[3] The order also states that "this missing portion of the record is material."
[4] RALJ 4.1 provides:

(a) Superior Court. After a notice of appeal has been filed, the superior court has authority to perform all acts necessary to secure the fair and orderly review of the case.
(b) Court of Limited Jurisdiction. After a notice of appeal has been filed, and while the case is on appeal, the court of limited jurisdiction has authority to act in a case only to the extent provided in these rules, unless the superior court limits or expands that authority in a particular case.
[5] RALJ 5.4 does not require a new trial if the loss or damage is attributable to the appellant. Here, there is no dispute that the loss was not attributable to Osman.
[6] The RALJ rules do not define "significant" or "material." When a term is undefined, we may look to the dictionary for its ordinary meaning. State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998). Black's Law Dictionary defines "material" as "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Black's Law Dictionary 998 (8th ed.2004). Webster's Dictionary defines "significant" as "having or likely to have influence or effect." Webster's Third New International Dictionary 2116 (1966).
[7] In addition, Osman's statement would still be admissible as a statement against interest under ER 804(b)(3).
[8] The Criminal Rules for Courts of Limited Jurisdiction (CrRLJ) do not require the district court to enter written findings. See CrRLJ 3.6.
[9] Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).