IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31776-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELOY A. GARZA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. – Eloy Anthony Garza appeals his conviction for vehicular assault.

He contends the trial court erred in (1) admitting his alleged custodial statements made

in the back of a patrol car without necessary warnings, and (2) admitting warrantless,

alleged unconstitutional blood alcohol content (BAC) implied consent results under

RCW 46.20.308. We conclude Mr. Garza's statements were not custodial or coerced,

and any error in admitting the BAC results was harmless without reaching Mr. Garza's

constitutional concerns. Accordingly, we affirm.

FACTS

On February 19, 2011, Mr. Garza and his cousin Michael Garza attended an

evening party at Victoria Gil's house where Mr. Garza admitted drinking beer and

vodka. According to Ms. Gil, after Mr. Garza argued with his ex-girlfriend, she, Michael,

Mr. Garza, and an unnamed fourth person left the party in a car. According to the defense, Michael helped an intoxicated Mr. Garza into the right rear passenger seat, an intoxicated Ms. Gil sat behind the driver in the left rear seat, Michael sat in the back as well, and the fourth person was most likely the driver.

Later that evening, Washington State patrol troopers responded to the scene of a one-car collision. The car, belonging to Ms. Gil, had crashed into a tree. Upon arrival, Troopers Todd Haddorff and Seth Berghoff found the car abandoned with the right front passenger door and left rear passenger door ajar. The driver's door was jammed shut. The troopers noticed the airbags had recently been deployed and saw what appeared to be blood on the driver's airbag. Motorists advised the troopers a man was seen walking in the area. Trooper Berghoff went to find the man and found Mr. Garza.

Mr. Garza was soaking wet and shivering in the freezing conditions. After Trooper Berghoff contacted him, Mr. Garza asked if he could sit in the patrol car. Trooper Berghoff patted Mr. Garza down for safety purposes, wrapped a blanket around him, helped him, unhandcuffed, into the backseat of the patrol car, shut the door, and turned up the heat. Trooper Berghoff asked Mr. Garza if he had been involved in the car accident. In his now contested statement, Mr. Garza said he was just trying to get home and had missed his turn to Higgins Road. When Trooper Berghoff asked if he had been driving, Mr. Garza replied he did not know who the driver was. Trooper Berghoff could smell "an obvious odor of intoxicants coming from [Mr. Garza's] person"

and noticed Mr. Garza's bloodshot, watery eyes. Report of Proceedings (RP) at 342. Trooper Berghoff took Mr. Garza to the hospital after he complained of shoulder pain.

At the hospital, Trooper Haddorff saw both Ms. Gil and Mr. Garza. Ms. Gil was slurring her words, had watery eyes, smelled of alcohol, and had broken her arm. Mr. Garza had watery, bloodshot eyes, smelled of alcohol, was soaking wet, and had dirt on his face. His movements were lethargic and slow, and he was unresponsive. When Gloria Garza, Mr. Garza's mother, saw him in the hospital, she similarly observed Mr. Garza was "drunker than I've ever seen him in my life," was "not really conscious of where he was or who we were talking to," and was generally not responding well. RP at 421-22.

While in the hospital, Trooper Haddorff read Mr. Garza his rights twice as well as the special evidence warning for blood draws. When asked if he understood his rights, Mr. Garza did not respond. In reading Mr. Garza the special evidence warning, Trooper Haddorff advised Mr. Garza he was under arrest. Subsequently, Mr. Garza's blood was drawn to determine his BAC, which was determined to be 0.17 grams per hundred milliliters, well above the legal limit.

Detective William Bryan, a technical collision investigator, investigated the accident and found blood on the driver's airbag and stretching of the driver's seatbelt. Detective Bryan opined the driver would strike the driver's airbag, and, as the driver's door did not open, it was unlikely the other passengers were the source of the blood because they would have no reason to be in the driver's area. Deoxyribonucleic acid

3

(DNA) testing of the blood stain and the blood obtained from Mr. Garza at the hospital later showed the blood on the airbag was Mr. Garza's. The stretching of the seatbelt indicated someone wore it at the time of the collision. According to Detective Bryan, a violent collision could leave marks on the person wearing the seatbelt. Had they been wearing seatbelts, the driver and the passenger behind the driver would have marks on their left collarbone/shoulder. Mr. Garza had marks on his left shoulder, and he fractured his left collarbone in the accident. Before the DNA results were returned, Detective Bryan believed Michael Garza was the probable driver; when he spoke with Mr. Garza by phone on March 18, 2011, he did not suspect Mr. Garza was the driver.

In April 2012, the State charged Mr. Garza with one count of vehicular assault. The trial court held a combined 3.5/3.6 hearing to determine whether the statements Mr. Garza made to Trooper Berghoff while inside the patrol car were admissible and whether the blood draw should be suppressed. The trial court concluded Mr. Garza was not in custody when he made his statements, *Miranda* warnings were not needed, and the statements were admissible. The trial court denied Mr. Garza's motion to suppress the blood draw, finding the blood draw was justified under the implied consent statute, RCW 46.20.308. Mr. Garza was convicted as charged. He appealed.

4

ANALYSIS

A. Statement Admissibility

The issue is whether the trial court erred in admitting Mr. Garza's admissions made while he was in Trooper Berghoff's patrol car as noncustodial statements. Mr. Garza contends the setting was custodial, thus requiring *Miranda*[1] warnings.

Although Mr. Garza argues his statements were custodial, he does not challenge the trial court's CrR 3.5 findings of fact. "Unchallenged findings of facts are verities on appeal." *State v. Lorenz*, 152 Wn. 2d 22, 36, 93 P.3d 133 (2004). We review a trial court's custodial determination de novo. *Id.* *Miranda* warnings "protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). If a state agent interrogates a suspect in custody without giving *Miranda* warnings, any testimonial evidence elicited cannot be used against the suspect at trial. *Heinemann v. Whitman County Dist. Court*, 105 Wn.2d 796, 801, 718 P.2d 789 (1986). Thus, *Miranda* warnings are required when a suspect is subjected to (1) custodial (2) interrogation (3) by a state agent. *Heritage*, 152 Wn.2d at 214. Here, the sole disputed element is whether the questioning was custodial.

"A defendant is in custody for purposes of *Miranda* when his or her freedom of action is curtailed to a degree associated with formal arrest." *State v. Grogan*, 147 Wn.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

5

App. 511, 517, 195 P.3d 1017 (2008) (internal quotation marks omitted) (citation omitted). We use an objective test to ascertain "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." *Lorenz*, 152 Wn.2d at 37. Not all police encounters are custodial. For example, in a *Terry*[2] stop situation, the police are allowed to ask questions without rendering a suspect "in custody." *See Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *see also Heritage*, 152 Wn.2d at 218 (Washington courts agree questioning during "a routine *Terry* stop is not custodial for the purposes of *Miranda*"). In a *Terry* stop, the police can "ask a moderate number of questions . . . to determine the identity of the suspect and to confirm or dispel the officer's suspicions" without providing a person with *Miranda* warnings. *Heritage*, 152 Wn.2d at 218.

We must determine if a reasonable person in Mr. Garza's position would have believed his freedom was curtailed to a degree associated with arrest when Trooper Berghoff asked him if he was involved in an accident. The facts as found by the trial court show Trooper Berghoff saw Mr. Garza walking along a road soaking wet, shivering, and trailing water behind him. The trooper exited his patrol car without activating his lights and contacted Mr. Garza. Mr. Garza voluntarily asked to sit in the patrol car to warm up. Trooper Berghoff patted down Mr. Garza to ensure officer safety as a normal practice. Then, the trooper wrapped Mr. Garza in a blanket, allowed him to

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

6

sit in the back seat of his patrol car without handcuffs, and shut the doors to maintain the heat. At no time while Mr. Garza was seated in the patrol car did the trooper tell Mr. Garza he was under arrest or was not allowed to leave. Trooper Berghoff then generally asked whether Mr. Garza was involved in the car accident and if he was the driver. Mr. Garza voluntarily responded, saying he had been trying to get home, had missed his turn, and did not know who was driving. The trial court found no evidence of coercion, concluded the statements were made voluntarily in a noncustodial situation, and allowed the statements into the trial evidence.

When Trooper Berghoff asked if Mr. Garza was involved in the accident and if he had been driving, Trooper Berghoff was making general inquiries in an attempt to get information about the abandoned accident scene. Mr. Garza's custody arguments fail. First, a quick pat down before being allowed in a police car is a reasonable action to ensure an officer's safety and would not lead a reasonable person to believe they were not free to leave. Second, while Trooper Berghoff placed Mr. Garza in the car, he did so at Mr. Garza's request. And lastly, while Mr. Garza could not open the patrol car doors without Trooper Berghoff's assistance, Trooper Berghoff gave no indication he would not open the doors had he been asked to do so. Furthermore, the doors had been shut not to keep Mr. Garza from leaving but instead to warm up a man who had been soaking wet and walking around outside in freezing temperatures.

Given this record, we conclude the statements were voluntarily made in a noncustodial environment without coercion. Mr. Garza's freedom was not curtailed to a

7

degree associated with arrest. This encounter was more similar to a *Terry* stop when Mr. Garza stated he was trying to get home, he had missed his turn, and he did not know who was driving. As such, no *Miranda* warnings were needed, and the statements were admissible. In sum, the trial court did not err in allowing the challenged statements.[3]

### B. Warrantless Blood Draw

The issue is whether the trial court erred in denying Mr. Garza's suppression motion for the warrantless blood draw. Mr. Garza first contends a warrant was required under the Supreme Court's recent holding in *Missouri v. McNeely* deciding "the natural dissipation of alcohol in the blood" is not a per se exigency justifying a warrantless blood draw. *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1563, 185 L. Ed. 2d 696 (2013). Second, he contends the blood draw was not authorized under Washington's implied consent statute, RCW 46.20.308, because *McNeely* vitiates the law's sections permitting warrantless blood draws in cases of persons arrested for vehicular assault or

---

[3] While we conclude the statements were admissible, even if they were obtained while Mr. Garza was in custody, admission of the statements was harmless error. *See State v. Guloy*, 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985) (erroneous admission is harmless error if the untainted evidence is so overwhelming a reasonable jury would have reached the same result absent the admission). Mr. Garza's statement that "he just wanted to get home" does not imply whether he was the driver or not. RP at 338. His admission he did not know who the driver was helps his case and is consistent with his testimony. And his statement he missed his turn implies he was the driver, but other evidence corroborates this implication: the blood on the airbag was Mr. Garza's; the driver's seatbelt had been worn, and Mr. Garza had injuries consistent with being the driver; and the driver's door was stuck, making it unlikely a person other than the driver got blood on the airbag. Additionally, because we conclude Mr. Garza was not in custody while in the back of Trooper Berghoff's patrol car, we do not address the State's alternative community caretaking arguments.

who are unconscious when the blood draw was performed. Mr. Garza's second

contention is discussed first, and because it is dispositive based on harmless error we

do not reach Mr. Garza's first contention or his constitutional concerns.

In reviewing the denial of a suppression motion, we "determine[] whether

substantial evidence supports the challenged findings of fact and whether the findings

support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266

(2009). Substantial evidence exists when it is enough "to persuade a fair-minded

person of the truth of the stated premise." *Id.* (citation omitted). Conclusions of law

from an order on a suppression motion are reviewed de novo. *Id.*

"[T]he taking of blood samples constitutes a 'search and seizure' within the

meaning of U.S. CONST. amend. 4 and CONST. art. 1, § 7." *State v. Judge*, 100 Wn.2d

706, 711, 675 P.2d 219 (1984). "[A] warrantless search of the person is reasonable

only if it falls within a recognized exception," such as consent or exigent circumstances.

*McNeely*, 133 S. Ct. at 1558, 1566; *see State v. Duncan*, 146 Wn.2d 166, 171-72, 43

P.3d 513 (2002). RCW 46.20.308[4] "creates a statutory presumption that anyone

---

[4] On the date of the accident, February 19, 2011, RCW 46.20.308(3) read:

Except as provided in this section, the test administered shall be of the
breath only. If an individual is unconscious or is under arrest for the crime
of felony driving under the influence of intoxicating liquor or drugs under
RECW 46.61.502(6), felony physical control of a motor vehicle while under
the influence of intoxicating liquor or drugs under RCW 46.61.504(6),
vehicular homicide as provided in RCW 46.61.520, or vehicular assault as
provided in RCW 46.61.522, or if an individual is under arrest for the crime
of driving while under the influence of intoxicating liquor or drugs as
provided in RCW 46.61.502, which arrest results from an accident in
which there has been serious bodily injury to another person, a breath or

9

arrested for driving under the influence of alcohol has consented to a . . . blood test for purposes of determining [BAC]." *State v. Morales*, 173 Wn.2d 560, 568, 269 P.3d 263 (2012); RCW 46.20.308(1). Unless a driver is arrested for vehicular assault or is unconscious, the driver may withdraw his consent. *Id.*; *see also State v. Steinbrunn*, 54 Wn. App. 506, 509-10, 774 P.2d 55 (1989) (holding an unconscious driver must also be arrested before police can lawfully take a warrantless blood sample). Thus, "[a] lawful arrest is a prerequisite to the application of the implied consent statute." *O'Neill v. Dep't of Licensing*, 62 Wn. App. 112, 116, 813 P.2d 166 (1991).

On appeal, a party may assign evidentiary error only on a specific ground made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). Requiring such objections at trial gives the trial court the chance to prevent or cure the error. *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976).

The State contends appellate review is precluded because (1) Mr. Garza failed to preserve his error claims regarding whether he was arrested or unconscious for the purpose of RCW 46.20.308, as he did not object at trial on those grounds, and (2) at trial, no discussion by the trial court or either party occurred concerning whether Mr. Garza was unconscious for purposes of RCW 46.20.308.

Mr. Garza did raise the arrest issue; thus, it is properly before us. While his suppression motion focused primarily on his *McNeely* warrant-requirement argument, he did briefly argue no statutory exception existed to the warrant requirement. The trial

---

blood test may be administered without the consent of the individual so arrested.

court presumably inferred this meant RCW 46.20.308 was not applicable, as it based its conclusions of law from the 3.6 motion on that statute. Furthermore, both the State and Mr. Garza questioned the troopers about whether Mr. Garza was under arrest when the blood was drawn.

Mr. Garza challenges two of the trial court's findings of fact regarding arrest. The court found (1) "After speaking with the victim, the troopers decided to arrest the defendant for Vehicular Assault" and (2) "At approximately 0048 hours, the Trooper . . . advised [Mr. Garza] he was placed under arrest for Vehicular Assault." Clerk's Papers at 102. These findings are supported by substantial evidence. The special evidence warning informs a suspect that he is under arrest. By reading this warning to Mr. Garza, Trooper Haddorff placed Mr. Garza under arrest. The trial court did not err in admitting the BAC result under RCW 46.20.308(3).

However, even if former RCW 46.20.308 (2011) is unconstitutional, we conclude any error in admitting the BAC result is harmless beyond a reasonable doubt. Any error in admitting unconstitutionally obtained evidence is subject to the constitutional harmless error test. *See State v. Peele*, 10 Wn. App. 58, 66, 516 P.2d 788 (1973). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *Guloy*, 104 Wn.2d at 425-26 (applying the "'overwhelming untainted evidence' test" in which an appellate court "determine[s] if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt"). In light of the untainted

11

evidence, Mr. Garza was without doubt intoxicated that night. First, troopers noticed Mr. Garza had watery, bloodshot eyes and smelled "an obvious odor of intoxicants coming from [Mr. Garza's] person." RP at 219, 342. Second, Mr. Garza admitted to Detective Bryan he was drunk that night and could not remember much. Third, Ms. Gil, Mr. Garza's mother, and Mr. Garza himself testified at trial that Mr. Garza was drunk. A reasonable jury would have reached the same result–that Mr. Garza was intoxicated– even in the absence of the BAC.[5]

Given our reasoning, we do not reach Mr. Garza's first contention concerning the constitutionality of RCW 46.20.308. When a case can be decided on nonconstitutional grounds, appellate courts should refrain from deciding constitutional issues. *See State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992). Additionally, the Washington Supreme Court will be hearing a case on whether, notwithstanding RCW 46.20.308, a search warrant or actual consent is needed to obtain a breath test from a person stopped on suspicion of driving under the influence.[6]

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW

---

[5] The State aptly notes Mr. Garza moved solely to suppress the BAC results and not the DNA results. No issue is raised here concerning DNA evidence admissibility. The jury answered the fact question of whether Mr. Garza was the driver against him based on strong evidence, including the DNA results.

[6] The case number is 90419-7 (*State v. Baird and Adams*). The date for oral argument is not yet set.

12

No. 31776-5-III
*State v. Garza*

2,06.040.


WE CONCUR:

Brown, A.C.J.

Fearing, J.

Lawrence-Berrey, J.

13